PHILANDER ATTERBERRY *et al.*, Appellants, v. WIL-
LIAM D. McDUFFEE, Executor, Respondent.

### Kansas City Court of Appeals, July 2, 1888.

1. ADMINISTRATION—LIABILITY OF EXECUTORS, ETC., FOR CARE—
MEASURE OF.—Executors and administrators stand in the position
of trustees and are liable only for want of due care and skill; and
the measure of care and skill required of them is the same as that
demanded of bailees for hire, viz., that which prudent men exer-
cise in the direction of their affairs; the care must be graduated
according to the character of the property, its value, and the con-
venience of its being made secure, the facility of its being stolen
and the temptations thereto.

2. ——— DEPOSIT IN BANK—FORM OF.—A *bona-fide* deposit of trust
funds in a bank, in the trustee's own name, it being clearly shown
that it was trust funds, will protect him against loss, which occurs
not on account of the form of the deposit, but by the destruction
or failure of the bank. It is different where there has been a
mingling of the trust fund with the individual money of the
trustee.

APPEAL from Macon Circuit Court, HON. ANDREW
ELLISON, Judge.

*Affirmed.*

Statement of case by the court.

This controversy grows out of objections made by
heirs to certain credits asked by an executor in his final
settlement. The credits are stated as follows: "This
executor claims the following additional credits occas-
ioned by loss of money deposited in Macon Savings
Bank in the ordinary course of business, for safe keep-
ing, and convenience in use, said bank at said time being
in good repute for solvency, and fully trusted and used
by the general community: March, 1881—By amount
deposited in said bank, $340.00; Oct. 1—By amount
deposited in said bank, $523.00. At the time of the

failure of said bank, February 15, 1882, there remained of said sums in said bank, not drawn out and used, the sum of $463.80. Since said failure this executor has received two dividends on said sums amounting to $62.88, leaving a balance in bank of $420.82.''

The evidence discloses the following facts, substantially :   J. M. Farmer died testate in 1880,—appointing Wm. D. McDuffee executor of his will.   The executor qualified and took charge of the estate in November, 1880.   The executor lived in the country, about fifteen miles from Macon City, which city seems to have been the point at which he transacted his business ; and the Macon Savings Bank was regarded as the most trustworthy bank in the community.

In February, 1881, the executor, under a power granted by the will, sold a tract of land to one Nancy J. Farmer for the sum of thirteen hundred dollars.   Mrs. Farmer held a certificate of deposit in said bank for a larger sum of money.   The parties to said sale went to the bank, and, by agreement, the cashier of the bank debited Mrs. Farmer's certificate with thirteen hundred dollars, and issued a certificate to the executor for that amount due in thirty days.   On the next day the executor obtained from the probate court an order of distribution among the legatees of the estate, for the sum of nine hundred and sixty dollars, which he had the bank pay over to the heirs out of the thirteen hundred dollars.   Whereupon McDuffee handed his certificate to the bank cashier, and told him to cancel it, and issue him a certificate as executor for the balance, which was three hundred and forty dollars.   Melone, the cashier, handed him a certificate therefor, which McDuffee put in his pocket-book without examining, supposing, as he testified, that it was properly drawn to him as executor. The evidence shows that the executor was anxious to distribute the money among the distributees as rapidly as possible, and again, in May, 1881, applied to the probate court for another order of distribution.   This

the court declined to do, as the first year of administration had not expired, and it could not then be known what debts might be presented for allowance, although the estate was deemed entirely solvent. The executor notwithstanding made other payments to the heirs in advance of any orders of the court, as he was satisfied there would be no debts. From time to time he sought additional orders from the court directing him to distribute the remaining funds in his hands; and was all the time expecting such order. So that it was not deemed best to make loans of the money except on very short call. As the certificates of deposit drew some interest for a short period it was thought best to let the three hundred and forty dollars so remain in bank. The executor repeatedly consulted with the probate judge respecting this money, and the disposition made of it; and his course in the matter was approved by the judge. In November, 1881, the court made an order directing the executor to pay certain heirs a sum sufficient to make them equal with other heirs who owed the estate. This payment was made. The executor kept the certificate of deposit for the three hundred and forty dollars with the papers belonging to the estate; and when he discovered that it ran in his name he concluded not to change it as the money was liable to be called for at any time for the purpose of distribution.

The executor also testified that living so far in the country, and the presence of tramps rendering it unsafe, in his judgment, to keep money at his home, he regarded this bank as the safest place for it. He had no individual money in said bank, as he had no such money. The bank was universally regarded as perfectly solvent, and its officers had the unbounded confidence of the community.

During the fall of 1881 the guardian of one of the heirs had made arrangements with the probate court to purchase for his ward a tract of land, to be paid for out of his distributive share in the hands of the executor. In October the executor came to town with $523.80 for

the purpose of meeting this arrangement. He was delayed by the railroad train, and did not get into Macon City until after the probate court had adjourned, and the parties concerned had gone home. Learning from the probate judge, and others, that the parties would be in next day to consummate the matter, and his family being sick requiring his presence, he left for home leaving this money with Ben. E. Guthrie, an attorney at law to be paid over the next day, on the completion of the proposed sale. Guthrie not liking to keep the money on his person or at his house over night, stepped into the business-house of the Macon Mercantile Company, and handed this money to one Kem, of this house, marked so as to indicate that it belonged to the Farmer estate, and requested him to place the same in his safe until he called for it the next day. This was done. The next morning Guthrie informed the probate judge that he had the money for the purpose aforesaid. It seems that the arrangement for the purchase of the land fell through. The money not being called for that day, Kem, not desiring to keep the same longer in his safe, deposited the same in said bank, and took a certificate therefor in the name of Guthrie.

The executor having an opportunity to loan two hundred dollars of this money to one Dodson for a short time, gave an order on Guthrie therefor, which Guthrie paid by a check on said bank out of the sum so deposited. McDuffee at the same time directed him to place the balance of the money for him in said bank. This was the twenty-sixth day of October, 1881. Accordingly Guthrie drew his check on the bank in favor of McDuffee for the balance, $323,80, and directed the bank officer to pass the same over accordingly. From some unexplained cause the bank did not enter this credit until the fourth day of February, 1882; near the date of the failure of the bank. McDuffee supposed all the time the money was deposited to his credit as executor.

The bank knew that all this money belonged to the Farmer estate. In January, 1882, McDuffee drew on

this fund, as he supposed, for two hundred dollars, which he had loaned for a short time to one Brockman. This and the other two hundred dollars loaned to Dodson left $123.80 in bank.

The notes taken by McDuffee for these two loans were to him as executor. When he applied to Melone, the cashier of the bank, for the last-named two hundred dollars, he told him he wanted two hundred dollars of the Farmer money, left by Guthrie, and Melone drew the check, which McDuffee signed. This check was charged against McDuffee individually as an over-drawn check, which fact McDuffee never learned until this trial.

At the date of the failure of the bank the Guthrie check for $323.80 was placed to McDuffee's credit in the bank by Melone, presumably, which paid the so-called draft, leaving the balance of $123.80 in controversy in this litigation. McDuffee had no knowledge of this act of February 4, 1882.

The probate court allowed the credits to the executor, and on appeal to the circuit court the same result was reached ; and the heirs prosecute this appeal.

BERRY & THOMPSON, for the appellant.

I. In making a disposition of the surplus money in his hands the executor should have consulted the probate court. He must keep and manage it as a trust, where he can at all times command it, and must not put it in peril. Rev. Stat., sec. 102 ; *Garesché v. Priest*, 9 Mo. App. 270 ; s. c., affirmed, 78 Mo. 126.

II. As to defendant's duty and the degree of diligence required of him as trustee, see 2 Pomeroy's Eq. Jur., secs. 1066, 1070 ; Schouler's Executors and Administrators, secs. 314, 315. He must enter into no relation which would be inconsistent with his trust. 2 Pomeroy's Eq. Jur., sec. 1077. At the time of the bank failure, the bank owed McDuffee, as executor, nothing. It did owe him, individually, the three hundred and forty-dollar note and the balance of his deposit account, to-wit, $123.80, and his relation to the bank was that of

an individual creditor, and as such these items were allowed to him by the assignee.

III. The taking of the three hundred and forty-dollar note, payable in sixty days to himself individually and not as executor, and allowing the balance of $123.80 to remain on deposit in bank in his name and to his individual credit, was a conversion of the funds of the estate by the executor, and it being lost by the failure of the bank, he must make it good to the estate. By such disposition of the trust fund, he committed a breach of faith in the eyes of the law, and there can be no question of good faith in the case. *Ackerman v. Ermott*, 4 Barb. 626; *Commonwealth v. McAlister*, 28 Pa. St. 480; *Morris v. Wallace*, 3 Pa. St. 319; *Knowlton v. Bradley*, 17 N. H. 458; *Evans v. Halleck*, 83 Mo. 376; *Nattnor v. Dolan*, 8 N. E. Rep. 289, and authorities cited; *Coleman v. Lipscomb*, 18 Mo. App. 443; *Brooks v. Mastin*, 69 Mo. 58; *Garesché v. Priest*, 9 Mo. App. 270; s. c., affirmed, 78 Mo. 126; 2 Pomeroy's Eq. Jur., sec. 1067; Perry on Trusts, secs. 443, 444, 445; Schouler's Executors, sec. 329. Defendant is liable, though he may have told the bank officers the money was a trust fund. *Williams v. Williams*, 55 Wis. 300. The deposit should have been in trust. 53 Ala. 169.

IV. Defendant was bound under the law to so manage the trust fund as not to put it in such a situation that it might in any contingency be subject to the claims or demands of others, or subject the *cestuis que trust* to litigation in respect to it. In case of defendant's death, or of attachment or execution against him while the fund remained in the bank, his administrator or creditors would have taken it. *Harny v. Dutcher*, 15 Mo. 89; *Nicolay v. Fritsche*, 40 Mo. 67; *Cook's Adm'r v. Holmes*, 29 Mo. 61; *Brooks v. Mastin*, 69 Mo. 58; *Block, Adm'r, v. Dorman*, 51 Mo. 31. And knowledge of the bank officers that it was trust money would have cut no figure. *Eyerman v. Bank*, 13 Mo. App. 289, and authorities cited.

SEARS & GUTHRIE, for the respondent.

I. The finding of the trial court was correct. The whole testimony shows a careful and conscientious discharge of duty by the executor. And unless there is some imperative rule of law making him liable, the courts will relieve him from losses and accidents, where he has used reasonable care and prudence. *Stull v. Meagher*, 44 Mo. 356; *Foster v. Davis*, 46 Mo. 268; *Clyer v. Anderson*, 49 Mo. 37; *Fudge v. Dunn*, 51 Mo. 264; *Gamble v. Gibson*, 59 Mo. 585; *Merritt v. Merritt*, 62 Mo. 150, 157.

II. This executor cannot and should not be held liable for the acts of Melone, whom he had a right to trust and did in good faith trust him, as did every businessman in the community. Melone's failure to keep the books of the bank properly and his positive wrong or mistake in not entering credits where they should be or entering them in the wrong name cannot render McDuffie liable, when McDuffie has, as all the evidence shows, acted honestly and in good faith, believing he was doing for the best, and honestly seeking the security and interest of the estate. And especially when his mistake, if he made a mistake, did not occasion the loss, but the loss would have occurred just the same. Nor is he liable for Guthrie's mistakes, since there was no evidence that he directed, intended it, knew or profited by it. He swears positively that he did not give Guthrie any direction to deposit in his name. *Julian v. Abbott*, 73 Mo. 580.

III. Appellants' contention that the executor is bound by the books of the bank and by the errors, mistakes and positive misfeasances of the bank officers cannot be the law. Because the bank officer entered up the money to the credit of McDuffie instead of to the Farmer's executor, as directed and as they knew they should have done, cannot bind McDuffie, nor make him liable for the loss, and the more so, as it is plain

from all the evidence that the loss would have occurred any how. Schouler's Executors and ˌAdministrators, sec. 315 ; *Twitty v. Houser*, 7 S. C. 153.

IV. There is no conversion in this case. Because the certificate was kept separate from the personal papers and estate of McDuffie, and kept wholly with the Farmer estate papers in a pocket-book used for that estate alone, and he at no time during the administration had any money of his own in the bank. Therefore, his administrator, in case of his death, could not take the money, nor his creditors. *Utly v. Tolfree*, 77 Mo. 307 ; *Campbell v. Cox*, 7 Rep. 666 ; *Richardson v. Bank*, 10 Mo. App. 246 ; *Parsley's Adm'r v. Martin*, 77 Va. 376 ; s. c., 46 Am. Rep. 733 ; Schouler's Executors and Administrators, sec. 205 ; *Cumberland v. Pennell*, 69 Maine, 357 ; s. c., 31 Am. Rep. 284 ; *Morrill v. Raymond*, 28 Kansas, 475 ; s. c., 42 Am. Rep. 167, and note. In the light of the above authorities, the bank knowing the money to belong to the Farmer estate, could not apply the money to payment of any debt McDuffie might have owed ( in fact he did not owe it a cent ), and on garnishment would at its peril have been required to answer that the money belonged to the Farmer estate. *Scales v. Hotel Co.*, 37 Mo. 520 ; *Weil v. Tyler*, 38 Mo. 545 ; s. c., 43 Mo. 581 ; *McDermott v. Donegan*, 44 Mo. 84 ; *Sheedy v. Bank*, 62 Mo. 1, 24. There is an entire lack of evidence to indicate the remotest intention to convert or mingle the trust estate with his own ; but, on the contrary, an evident care to avoid the mingling or conversion. We submit the authorities cited by appellants show that there was an intention to convert, and that the general current of the authorities requires an intention to convert. Appellants' cause rests on the fact of an intentional commingling or conversion, which occasioned the loss. But the alleged conversion did not occasion this loss. The loss would be the same if the deposit had been in the name of the estate. 2 Pomeroy's Eq. Jur., secs. 1066, 1076 ; *Gary v. National Bank*, 2 South Eastern

Reporter, 568; *National Bank v. Insurance Co.*, 104 U. S. 54.

V. In his settlement the executor is entitled to credit, if equity will allow it, although the law will not. Schouler's Executors, sec. 375; *Fudge v. Dunn*, 57 Mo. 264; *State v. Meagher*, 44 Mo. 356; *Stevens v. Gage*, 55 N. H. 175. Equity looks not to the form, but to the substance of things; and there was neither the intention of conversion nor the fact of conversion in this case; and the executor is not chargeable with the loss. 1 Pomeroy's Equity, secs. 364, 378.

VI. There is no investment of trust money in this case; nor was the trust character of the fund concealed from the bank, but the fact communicated to it; and the entries made by the bank to the individual account of the executor were against his directions and instructions, and without his knowledge at the time.

PHILIPS, P. J.—No question can properly arise on this record as to any misappropriation or application of the money in controversy by the executor. He never used it in his own business, nor mingled it with his individual money or estate. It was his duty to have the money in position to meet any debts, or the order of the probate court for distribution or other purpose. His evidence, and that of the probate judge, shows that he kept himself under the direction and advice of the probate judge. His sole accountability, therefore, turns upon the question of his vigilance and care in the custody of the fund. In other words, the issue is, was the executor guilty of such negligence in the keeping and management of the money as, in the sound discretion of a court of equity, ought to render him liable for its loss? Our own courts have established the rule as to the measure of care to be exercised by such trustees. It is stated thus, in *State ex rel. v. Meagher*, 44 Mo. 356: Executors and administrators stand in the position of trustees; and are liable only for want of due care and skill; and the measure of care and skill required

of them is the same as that demanded of bailees for hire, viz., that which prudent men exercise in the direction of their affairs. In the course of this opinion the court say : "The care must be graduated according to the character of the property, its value, and the convenience of its being made secure, the facility of its being stolen, and the temptations thereto."

So in *Fudge v. Durn*, 51 Mo. 264, the court say the executor is not in any sense an insurer of the property ; but a mere trustee acting for the benefit of others, quoting the language of Chancellor Kent in *Thompson v. Brown*, 4 John. Ch. Rep. 619 : "This court has always treated trustees acting in good faith with great tenderness." And again from Lord Hardwick in *Knight v. Earl of Plymouth*, 3 Atk. 480 : "If there was no *mala fides*, nothing wilful in the conduct of the trustee, the court will always favor him. For as a trust is an office necessary in the concerns between man and man, and which, if faithfully discharged, is attended with no small degree of anxiety and trouble, it is an act of kindness in any one to accept of it. To add hazard or risk to that trouble, and to subject a trustee to losses which he could not foresee, would be a manifest hardship ; and would deter every one from accepting so necessary an office."

It would be unreasonable to say that the executor in respect of the money in question did not exercise the degree of care and prudence which the most cautious of men exercise in the management of their own affairs under like circumstances. He kept this money at the safest place recognized in the community. Had he retained the same at his private house, and the money been stolen, in view of his evidence, he would have been guilty of culpable negligence for not putting it in bank. The only answer made to this is, that by putting the money in bank to his individual credit, he was guilty of an act of conversion ; and the money thereafter remained in the bank at his risk. This we might admit would be a correct exposition of the law, did it appear that the

executor intentionally so placed the money in bank as his, and the bank took and held it in ignorance of its trust character and the intent, one way or the other, of the party so placing it. *Coleman v. Lipscomb*, 18 Mo. App. 444. The evidence shows there was no intention on the part of the executor to have this money placed to his individual credit. He did not so direct it, and did not know at the time it was so done. Nor can it be said he was guilty, under the circumstances, of any culpable negligence in not examining the certificate at the time. He had no individual account at the bank. The cashier knew the money belonged to the Farmer estate, and it was entirely his fault that it was not properly accredited. In such case the bank could not avoid accounting for the money to the estate on demand of the legal representative thereof. *Ihl v. Bank*, 26 Mo. App. 128 ; *Utler v. Tolfree*, 77 Mo. 307 ; *Morrill v. Raymond*, 28 Kan. 415.

So it is held that a *bona-fide* deposit by a guardian of his ward's money in his own name, it being clearly shown that it was his ward's money, will protect him against loss, which occurs, not on account of the *form* of the deposit, but by the destruction of the bank. *Parsley, Adm'r, v. Martin*, 77 Va. 376. The loss in question in no wise resulted from the manner of the deposit, but would have occurred had the deposit been made in the name of the executor as such. The equity to the credit in such case must be precisely the same. Had there been any mingling of the trust fund with the individual property of McDuffee, the case would have been different. 2 Pom. Eq., sec. 1076.

As to the $123.80 item the principles of law stated are equally applicable. Guthrie knew the money belonged to the Farmer estate, and so did the bank. The executor never authorized or directed the deposit in Guthrie's name, or his individual name. When Guthrie went to make the deposit, or gave the check for the $323.80 in favor of McDuffee the bank officer stated that McDuffee had no individual account there. And,

as a matter of fact, he did not enter the credit until near the date of the failure of this bank. He informed Melone when he drew the check for the two hundred dollars that he wanted part of the Farmer money. The bank officer must have, for purposes of his own, been using this check.

We are unable to perceive how it can be held that any culpable negligence is imputable to the executor in this transaction. He had every reason to believe, just as Guthrie did, that the check had been properly passed to his credit. Melone had the confidence of the community ; and the depositors had well-founded belief in the safety of their deposits and the perfect integrity of the bank officers. The loss would have occurred in the same way had the check been promptly and properly placed to the credit of McDuffee as executor. In such case there is nothing for a court of equity, or one exercising equity jurisdiction, to hang a decree upon predicated of bad faith, laches, or negligent management.

It follows that the judgment of the circuit court is affirmed. All concur.