## �civil𝔢 Richmond.

PARSLEY'S ADM'R v. MARTIN AND ALS.

April 12th, 1883.

1. GUARDIANS—*Liabilities—Deposits.*—A *bona fide* deposit of his ward's money by guardian in his own name, provided it be shown that it was his wards' money, will protect him from liability for any loss which ensues, not by the *form* of the deposit, but by the general destruction of the currency and banking interests of the state.

2. IDEM—*Case at bar*—In a Richmond bank of good standing, in 1859, guardian deposited his wards' money at interest, taking certificates in his own name. It was proved that the money deposited was the money of his wards. At that bank he had no private account, and no money of his own. In 1863 the bank notified depositors to withdraw their deposits. His house was within the enemy's line, and he could not then put the money out at interest. He induced the bank to let it remain on deposit. The wards became entitled to receive the money in 1863. He offered them the certificates. They demanded gold or its equivalent. The money perished in the bank by the results of the war destroying all the currency of the state;

HELD: (*Lewis, P.,* and *Richardson, J., dissenting.*)

    1. The guardian is not liable for the loss.

    2. Parole evidence in connection with the certificates, and the declarations of the guardian made cotemporaneously with the deposits, are admissible to show that the money deposited was the money of the wards.

Appeal from decree of circuit court of Hanover county, rendered 10th May, 1878, in two suits consolidated and heard together under the styles of *Martin and Wife* v. *Parsley's administrator,* and *Terry and Wife* v. *Same.*

The syllabus indicates and the opinion of the court fully states the facts.

*John B. Young,* for the appellant.

*Haw & Waddill,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

A transcript of the record in these causes discloses the following facts: John P. Parsley, the intestate of appellant, qualified in the county court of Hanover county on or about the 26th of April, 1853, as the guardian of the female appellees, Eugenia E. Turner and George Ella Turner, infants, now the wives respectively of the male appellees, Robert M. Martin and Thomas S. Terry. He received as guardian, for each of these wards, who were sisters, the sum of $363.96 on the 26th day of April, 1853, and on the 3d of January, 1854, the further sum for each of $225.62. He loaned this money at interest for three or four years, until, in the fall of 1858, $500 of it was paid in to him by the borrowers of it, who were unwilling to hold it on loan any longer, the money matters of the country being then plenty and easy. He tried in vain satisfactorily to loan this money out at interest until on the 15th day of January, 1859, upon reliable information and advice, he deposited the said $500 at six per cent. interest in the Commercial Savings Bank of Richmond. Afterwards and during the said year 1859 the farther sum of $1,000 of this money of his wards was paid in to him by the borrowers of it. Being unable to loan the said money out at interest to individuals upon satisfactory security he, in like manner as before, also deposited this said $1,000 in the said Commercial Savings Bank of Richmond at six per cent. interest, on the 1st December, 1859. For both of these deposits in said bank he took certificates of deposits in his own name. He had no money of his own in said bank, and no other money whatever there deposited at any time, and he never checked upon the said money so deposited, or in any way made use or avail of it for any purpose. During the war the bank advertised for the

withdrawal of deposits; whereupon he went to the bank and stated to them (the officers) that the money on deposit in said bank, represented by the certificates which he held, was not *his* money, but was the money *of his wards;* and that it would be impossible to put it out at interest or to find a place of safety for it, as his house was within the enemy's lines, and was liable to be pillaged at any moment; and he prevailed upon the officers to let it remain in said bank.

As soon as his said wards were in condition, from arrival at age, or marriage, to receive payment of the money in his hands as their guardian, he offered to settle with both of them, and offered them these certificates of deposit; their husbands, however, the said Martin and Terry (male appellees here) declined, and positively and persistently refused to receive the said certificates, not because of any question or doubt that they represented the money of his wards, but expressly on the insistance that the guardian should pay to them in funds equivalent to those in which he originally collected the money from the commissioners of court in 1853 and 1854—that is,.in *gold or silver*, or its equivalent.

The said Commercial Savings Bank of Richmond was an institution in full business. operation and in good credit, but, like every other bank in the state, it went down with the fall of the southern Confederacy.

At the February rules, 1867, the said Robert M. Martin and Eugenia E., his wife, filed their bill in the circuit court of Hanover county against the said John P. Parsley, guardian of Eugenia E. Martin and others, his supposed official sureties, charging that a considerable amount of property, real and personal, had come to the hands of the said Parsley, as guardian aforesaid, and praying for a settlement of his accounts as such and for a decree for the balance which should be found due them on such settlement.

A similar suit was brought at the same time by the said Thomas S. Terry and George Ella Terry, his wife, against the

said Parsley, guardian, setting forth the same charges and asking for similar relief in behalf of the said Terry and wife.

The answer of J. P. Parsley, guardian, was prepared for him, and under his direction, but he suddenly died before he had sworn to it. It was adopted and filed as his answer by William M. Parsley, his administrator, who is the appellant here.

At the May term, 1873, of the said circuit court of Hanover, it appearing that all the questions arising in each of these causes are the same, and that the same evidence is applicable to and had been taken in each of them, it was ordered that they be consolidated and thereafter heard together. And it was further ordered, that the reports filed in the said causes by the master commissioner, Winn, together with all the evidence which had been before the said commissioner, or filed in the said causes, should be recommitted with directions to the said commissioner to examine the same and any other evidence that might thereafter be taken or filed by either party, and report to the court.

In his report responsive to this order, made November 3, 1875, the said commissioner reported among other things, that he had carefully examined and considered all the reports and evidence taken and filed in said causes, and that "the funds deposited by John P. Parsley in his own name, in the Commercial Savings Bank, as shown by certificate filed with former report, amounting in the aggregate to $1,500, were funds belonging to the female plaintiffs, then wards of said Parsley."

" That the said Commercial Savings Bank was a proper place of deposit for such money, and was such a place as a prudent fiduciary might have made such a deposit at the dates at which said deposits were made by said Parsley."

" That the said Commercial Savings Bank has failed, and failed from the results of the late war, the said bank having invested its assets in Confederate bonds or other Confederate securities."

That Mrs. Martin became of age January 1, 1862, and that her husband was a minor when she married him, and did not

arrive at age till 22nd January, 1863; that Mrs. Terry married her husband 22nd February, 1863, and became of age March 5th, 1865; that it is evident that said Parsley could not settle with either of the said parties until 1863; that if the said Parsley, who was in the enemy's lines at the time the said Commercial Savings Bank gave notice to its depositors to withdraw their funds on deposit in said bank, had withdrawn the said sums at the time of said notice, he would have been compelled to have deposited it in some other bank, or invested it in Confederate securities; and that he was justified in letting it remain in said bank, especially as his wards were then not of age, and he could not pay it over to them; that had the money been withdrawn and deposited in any other bank, or invested in Confederate securities, the result would have been the same.

At the May term, 1878, of the said circuit court of Hanover, the said court, without passing upon the report of the master commissioner taken and filed in the cause responsive to the order and reference by the court either to approve or disapprove the same in whole or in part, and without passing upon any of the exceptions filed by both plaintiffs and defendants to the said report, rendered a decree against the defendant, to be satisfied out of the estate of his intestate, the said John P. Parsley, deceased, for the balances found due and reported by the commissioner from the said John P. Parsley, guardian, to his said wards, the female plaintiffs, and the costs. From this decree an appeal and *supersedeas* were allowed by one of the judges of this court.

The whole finding and report of the master commissioner last made in this cause, in direct response to the order and inquiry of the circuit court of Hanover, was in favor of the good faith, legal action and prudent conduct of the guardian; and should, we think, have induced a decision by the court in favor of his non-liability. Upon the general principles applicable to the conduct of fiduciaries under such circumstances and difficulties as environed this guardian, these deposits were a legal and proper disposition of the funds of his wards. No order of

court was necessary to enable or authorize him to lend it out. He did so lend it out at interest and it was returned back upon his hands at a time when money was abundant and most difficult of investment. Being thus again in his hands, he did not apply it to *his own uses* or *mix* it with *his own funds;* and, finding it impracticable to loan it out again to advantage, he did the only thing he could properly and safely do, viz: to put it on deposit in a perfectly safe and reliable bank in Richmond, upon six per cent. interest. This it was his right to do without asking for an order of court; all his duty and responsibility being to see that his choice of a depository was a prudent and safe one. This case is wholly different and distinguishable from the large class of cases in which this court has held fiduciaries responsible who received the money of their *cestui que trust in good currency,* equivalent to gold and silver, and wholly failed to make any investment of it *at the time,* but applied it to their own uses; and then, after the war had commenced and the *currency* had become greatly *depreciated,* have sought to pay it back *in such depreciated* currency, or by getting orders of court for its investment in Confederate and other well-nigh worthless securities, thereby making profit and advantage to themselves.

This guardian made not one cent out of his wards. He deposited their money in a first-class bank at six per cent. interest, just as he received it. He could not pay it to his wards as they were then infants; and he acted prudently as with his own money and as a court would have ordered or sanctioned if applied to at the time.

A *bona fide* deposit of the money of his wards by the guardian in his own individual name, *provided that it can be shown that it was in fact the money of his wards,* will acquit and protect the guardian from the responsibility of loss which ensues not by *the form* or designation of the deposit, but which has been lost by the general and universal destruction of the whole currency and all the banking and financial interests of the state.

That it was the very money of his wards; that he deposited it in good faith as an investment for them, though in his own name, as the best and, indeed, the only disposition that he could make of it at the time and in the circumstances and surroundings of his situation, and of the *state*, then actually invaded, over-run and ravaged by a public enemy within whose lines his very dwelling was enveloped—the evidence in the record abundantly proves. This appears by Parsley's answer and deposition and by his declarations cotemporaneously made and proved by the depositions filed in the cause. In *Beazley* v. *Watson*, 41 Ala. R. 234–239, in a case of similar form of deposit by a guardian, it was decided that it was competent to show by parol evidence, in connection with the certificate, that the money deposited was in fact the money of the wards and not of the guardian. And also that the declarations of the guardian, cotemporaneous with the deposit, that the money belonged to his ward, are competent evidence to prove the fact. *Bank* v. *Coleman*, 20 Ala. R. 140 ; and *McTyer* v. *Steele*, 26 Ala. R. 487.

It is shown by the record that Parsley had no money of his own in said bank, or any other dealing with it whatever; that he never checked on this fund or drew the interest; and it would be unreasonable to suppose that he would have deposited this large sum of his own money and let it remain there for years unused and untouched ; a sum, too, within reasonable approximation to the very sum then in his hands due to his wards. It was within $23.46 of the amount then due by him to his ward, Mrs. Terry, and within $16.36 of the amount then due to his other ward, Mrs. Martin. That the sums should not have corresponded to a dollar is perfectly reasonable, as he could not have known exactly, until his accounts had been fully stated. He had lent their money out and it had been paid back to him ; and just as he received it he deposited it at interest in bank ; and not knowing what else to do with it he let it remain where it was ; and where too, it is to be remarked, it would have been safe and returnable to him in good currency after the war but

for the failure of the Confederacy, the burning of the city of Richmond and the outlawry of all the currency of the state.

In this deposit there was no mingling of this fund with Parsley's own money; it was kept as a *special* fund; he made no profit and derived no use or advantage from it; he deposited the same kind if not the very same money which he received; he deposited it *when he received it.* It was lost by no fault or default of his and not because of the *form of the deposit* (for it would have been equally lost if the deposit had been in his name as guardian).

This case falls directly within the principles announced by this court in the cases of *Davis* v. *Harman,* 21 Grat. 194, and *Pidgeon* v. *Williams,* 21 Grat. 251, and in *Cooper and als* v. *Cooper's ex'or and als,* decided by this court within the last few weeks. *Ante,* page 198.

Cases in which a fiduciary has been held to responsibility for the loss of the money of his ward or of an estate, which had been *deposited in his own name,* have all been those in which the fiduciary fund *was mingled with his own private or personal funds* or *used by him* for his own purposes, or where the deposit was made in *depreciated money* as compared with *the money received.* This was the case—this the vice which infected the case of *Vaiden and als* v. *Stubblefield's ex'or and als,* 28 Gratt. 153; and we believe that no case has ever been decided or recognized as authority in this State which would throw the loss of the fund in these causes upon the guardian, Parsley, or upon his estate. It appears from the record that Parsley laid his vouchers as guardian before a commissioner of the court in which he had qualified, for the years 1853–1854, for settlement, but that they were lost or destroyed and his account consequently was not then settled. He did subsequently settle before a commissioner of the said court, who returned his accounts to the court, but the public records of Hanover county were destroyed by fire and by the hands of the public enemy. The guardian, Parsley, in 1863, offered and urged a settlement and

payment of his wards' money in his hands to their husbands, Martin and Terry, as soon as they were of age and capable in law to receive it; but they peremptorily refused to receive anything but gold or silver, or its equivalent.

In the case cited of *Davis* v. *Harman and als*, 21 Grat. 194, the fiduciary, Davis, deposited the fund of his trust in bank *in his own name*, and it was *mixed and merged with his own money* and in his private bank account; yet even in *that* case *Judge Christian*, speaking for the court, said: "We would not be understood as at all disputing the authority of the cases relied upon to show that where a trustee deposits the trust fund with a banker or in a bank and does not separate it from his own funds by designating it as the trust fund, and a loss occurs *in consequence of such deposit*, that loss must fall on the trustee; as, for instance, where the bank fails or the banker becomes insolvent. But in this case these authorities have no application; the loss here was not *in consequence of the deposit*, but *the thing deposited* perished, without any default anywhere, by the sudden and irretrievable destruction of the whole currency of a country by the termination of a civil war which had destroyed the very power which created it. Neither the authorities relied upon nor the reason upon which they are founded can have any application to a case *like this*. It would be too rigorous and unjust; it would be in violation of those well-settled principles, founded in reason and conscience, which control the action of courts of equity, to hold that though the appellant has been guilty of no *mala fides*, no misconduct, no negligence, yet he is to be held responsible for a loss which he had no part in creating and no power to prevent. But that loss, we think, ought to fall upon those who were entitled to the fund that has perished." Upon the review of this whole case and all the questions presented by the record, and the argument of counsel, we are of the opinion that the decree of the circuit court of Hanover complained of is erroneous, and must be annulled and reversed.

*Lacy, J.,* and *Hinton, J.,* concurred in the opinion of *Fauntleroy, J.*

*Lewis, P.,* and *Richardson, J.,* dissented.

The decree is as follows:

This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said circuit court erred in adopting statements "A" of Commissioner Winn's reports, instead of statements "B" of said reports in the settlement of the accounts of the appellant's intestate of his transactions as guardian of his wards, Eugenia E. Martin and George Ella Turner; it appearing by said statements "B" in said reports of Commissioner Winn that there is nothing due from the said guardian to either of his said wards, after crediting him with the amounts deposited by him in the Commercial Savings Bank. It is, therefore, decreed and ordered that said decree be reversed and annulled, and that the appellees pay to the appellant his costs by him expended in the prosecution of his said appeal and *supersedeas* here. And this court, proceeding to render such decree as the said circuit court ought to have rendered, it is decreed and ordered that the bills of the plaintiffs in said circuit court be dismissed, and that said plaintiffs pay to the defendant in said circuit court his costs by him about his defence of said causes expended. Which is ordered to be certified to the said circuit court of the county of Hanover.

DECREE REVERSED.