## Wytheville.

LOUIS HERELICK, ALSO KNOWN AS LOUIS HARELICK
AND LOUIS HORELICK, ADMINISTRATOR OF THE ES-
TATE OF ABRAHAM KAPLAN, DECEASED, AND THE
FIDELITY AND CASUALTY COMPANY OF NEW YORK,
A CORPORATION CHARTERED UNDER THE LAWS OF
THE STATE OF NEW YORK, DOING BUSINESS IN THE
STATE OF VIRGINIA, *v.* SOUTHERN DRY GOODS AND
NOTION COMPANY, INCORPORATED, WHO SUES FOR
THE BENEFIT OF ITSELF AND ALL OTHER CREDITORS
OF THE ESTATE OF ABRAHAM KAPLAN, KNOWN AS A.
KAPLAN, DECEASED, AND OF THE DISTRIBUTEES OF
THE SAID ESTATE, WHO. MAY COME INTO THIS CAUSE
AND CONTRIBUTE RATABLY TO THE EXPENSES THEREOF.

June 12, 1924.

1. EXECUTORS AND ADMINISTRATORS—*Devastavit in Giving Credit After Sale
   of Stock of Merchandise—Case at Bar.*—An administrator sold the
   stock of goods and store fixtures of his decedent for $13,913.92, terms
   cash. The purchaser paid $3,913.92 cash and told the administrator
   he could not pay the rest but that a bank had agreed to loan him
   the remaining $10,000.00 on condition that the administrator would
   deposit the same in the bank and allow it to remain there for thirty
   days. The judge before whom the administrator qualified was a
   director in this bank and solicited him to make this deposit. The
   administrator had never heard any rumors to the effect that the
   bank was not financially sound, though there were such rumors.

   *Held:* That under section 5381 of the Code of 1919 the administrator
   was not guilty of a *devastavit* in giving the credit he gave the purchaser
   in this manner for the $10,000.00 balance.

2. EXECUTORS AND ADMINISTRATORS—*Administrators' Sales—Reasonable
   Credit.*—Section 5381 of the Code of 1919 authorizes a personal repre-
   sentative to sell the goods of his decedent at public auction giving a
   reasonable credit and taking a bond with good security. If the
   length of credit is reasonable the circumstance that the security taken

was not a "bond" is immaterial, certainly in equity, if the security taken was regarded as "good security" at the time, by the personal representative acting in good faith and with reasonable diligence—that is, acting in the exercise of a fair discretion and in the same manner that a reasonably prudent business man would have acted under the same circumstances had the subject been his own property.

3. FIDUCIARIES—*Personal Liability—General Rule.*—Administrators, executors and other trustees are not to be held personally responsible for any loss of the trust property or funds where there is no just imputation of *Mala fides* on their part, and the fault is at most but an error of judgment, or a want of unusual sharpsighted vigilance—*i. e.,* where the fiduciary has acted in good faith, with fair discretion and in a manner in which a reasonably prudent business man would have acted, under the same circumstances, had the subject been his own property, and has not been guilty of gross negligence or premeditated and fraudulent conduct.

4. EXECUTORS AND ADMINISTRATORS—*Commissions—Commissions on Purchase Price of Goods which was Never Collected—Case at Bar.*—There was no error in the refusal to allow an administrator a commission on $10,000.00 for which he gave credit to the purchaser of decedent's goods at an auction sale and which never came into the hands of the administrator, except upon condition that the $10,000.00 be in fact paid to the estate by him or his surety.

5. EXECUTORS AND ADMINISTRATORS—*Commissions—Commissions on Receipts not Sales.*—The commission to which an administrator is entitled is a commission on "receipts" (Code 1919, section 5425), not on sales, for which the purchase price is never collected by him.

6. EXECUTORS AND ADMINISTRATORS—*Prematurely Paying Debts—Personal Liability of Representative.*—Where there are creditors, and where the administrator has not, but merely expects to have, in hand, or that there will be from some other source, sufficient assets to pay all debts, and, from any cause whatever, other than *vis major,* there is not such sufficiency of assets, the administrator is liable for overpayments made by him to creditors of the decedent prior to the expiration of the twelve months from his qualification and prior to his having obtained protection from personal liability as provided for by statute, such payments being in excess of the *pro rata* share of the payees in the assets.

7. EXECUTORS AND ADMINISTRATORS—*Distribution—Personal Liability of Executors.*—Where there is insufficient personal estate to pay all debts, the administrator, although he may have no actual notice of their existence, takes the risk of personal liability for payment of debts if he distributes the personal estate before awaiting the twelve months period allowed by statute in Virginia for presentation of debts and before then obtaining protection from personal

liability therefor, by refunding bonds or before such protection is afforded him by order of court under the statute law in such case made and provided, unless the creditor's laches or other conduct thereafter should bar the demand.

Appeal from a decree of the Hustings Court of the city of Petersburg.   Decree for complainant.   Defendant appeals.

*Reversed in part, affirmed in part, and remanded.*

This is a suit in equity instituted by the appellee, the Southern Dry Goods and Notion Company, Incorporated, who sues, etc., as stated in the caption (hereinafter called plaintiff), against the appellants (hereinafter called defendants, or by name), seeking to hold the defendant administrator, and the defendant Fidelity and Casualty Company, as surety on the official bond of the administrator, liable for an alleged *devastavit* by the administrator to the amount of $10,000.00.

The cause came on to be heard in the court below upon the bill and exhibits, the report of a master commissioner, together with depositions and exhibits therewith filed, on exceptions to such report by the plaintiffs and defendants and others, and on a statement of the account of the administrator defendant, on May 2, 1922; and on such date the court entered the decree under review, which held that there came into the hands of the administrator assets of the estate of the aggregate value of $13,948.86, instead of $3,948.86, as stated in the commissioner's report; that the administrator should be charged with such value of $13,948.86, as the total assets of the estate for which he should be held to account; that the administrator is not entitled to a credit in the sum of $10,000.00 claimed by him to have been lost to the estate without such fault or negligence on his part as would render him liable therefor;

that the court was of opinion, and so held, that the said
$10,000.00 was lost to the said estate as a result of
transactions between the said administrator and I. Ber-
glass and the Peoples Bank of Hopewell, under circum-
stances which constituted, as to said administrator, a
*devastavit* thereof, and rendered him and the said Fi-
delity and Casualty Company, as surety on his bond
as administrator, liable therefor; and the decree further
provided that it appeared to the court that there was
due from the administrator to the estate, as of October
16, 1919, being one year from the date of his qualifica-
tion as administrator, the principal sum of $12,507.19
(without allowing the administrator any commissions
on the said sum of $10,000.00 lost to the estate, as afore-
said, but charged to the administrator and included in
the said $12,507.19); and that it further appeared to the
court that the said Fidelity and Casualty Company was
bound as surety, as aforesaid, in the sum of $10,000.00,
the penalty of said bond; and decree was entered in
favor of said estate against the administrator for said
sum of $12,507.19, with interest thereon from October
16, 1919, until paid, and against the administrator and
said surety, jointly and severally, to the extent of
$10,000.00 on account thereof, with interest thereon
from the date of the decree, and the costs of the suit;
and the defendants were required, respectively, to de-
posit in a bank designated to the credit of the court in
this cause the respective sums of principal, interest and
costs thus decreed against them, respectively; with fur-
ther provision, however, that if and when the adminis-
trator shall have complied with all the terms of such
decree, the court, in the administration of the funds
hereafter to be had by the court in this cause, will
allow the administrator a commission of five per cent
on the said sum of $10,000.00.

Further:   The decree just mentioned approved and confirmed the master commissioner's report in not allowing the administrator credit for the full amount he paid to the holders of certain notes of the decedent, in payment in full of such notes, before the expiration of twelve months from the qualification of the administrator, and after the Peoples National Bank was closed and in the hands of a receiver and its insolvency was generally known, because of which the said $10,000.00 loss to the estate occurred, such payment being in excess of the *pro rata* share of the debts represented by such notes of the assets actually gotten into his hands by the administrator for distribution amongst creditors (another circumstance attending such payment being that when it was made the notes mentioned were not yet due); the commissioner's report holding the administrator liable to the other creditors of that class for the due proportion of the amount so overpaid of the debts represented by such notes.

The other material facts shown in evidence are as stated in the following excerpts taken from the said master commissioner's report:

"The evidence shows that the defendant, Louis Harelick, qualified in the Corporation Court of Hopewell, before the Hon. Thomas B. Robertson, its judge, on the 16th day of October, 1918, as administrator of Abraham Kaplan, deceased, giving bond in the penalty of $10,000.00, with the Fidelity and Casualty Company of New York as surety; that an inventory and appraisement of the real and personal estate of said Kaplan was made on the 29th day of October, 1918, a copy of which is returned by said administrator to the commissioner of accounts of said court, who, however, did not deliver it promptly to the clerk for record; that on the said 29th of October, 1918, after due advertisement in

papers of Petersburg, Norfolk, Richmond and Balti-
more, the administrator made sale of the stock of goods
and store fixtures of said decedent at public auction,
for cash, on a percentage of the appraisement basis, at
which sale I. Berglass became the purchaser at ninety-
eight and one-half per cent of the appraised value,
amounting to $13,913.92; that soon after the sale said
Berglass came to Harelick, the administrator, and told
him that he had found that he could not pay the whole
sum in cash, but could and did, on the 1st day of No-
vember, 1918, pay $3,913.92 in cash, which the admin-
istrator deposited in the State Bank of Hopewell (now
defunct), and that the Peoples Bank of Hopewell had
agreed to loan him the remaining $10,000.00, on con- .
dition that the said Harelick would deposit the same in
the Peoples Bank and allow it to remain there deposited
for thirty days.   That said Judge Robertson, before
whom he had qualified as administrator, and who was
a director in the said Peoples Bank (and a man highly
esteemed by all who knew him), had solicited him to
make the deposit in that bank, and had assured him
that the money would be safe there; that he was ad-
vised by his counsel, J. P. Goodman, who held the
position of attorney for the Commonwealth, and others
whose advice he had solicited, to make this deposit—
only one of those whose advice was asked advising
against it, and he gave as the only reason for such ad-
vice that the capital of the bank was only $10,000.00,
and that he would not deposit that sum in any bank
whose capital was only $10,000.00.   The administrator
had never heard any of the rumors that said Peoples
Bank was not a financially sound institution, though
the solvency of this bank, the character of its president,
cashier, and of one of its clerks, was a subject of general
discussion among business and professional men of

Hopewell; opinion being expressed by many who professed to know, that the bank was badly managed, had no actual capital, and its existence a question of time only.   But it does not appear by the evidence that Harelick, the administrator, ever heard any of this adverse criticism and knew nothing that would suggest to him the insolvency of the bank.   The evidence further shows that in the six months of its existence the deposits of this bank grew from nothing to $70,000.00. Hopewell had sprung into existence on account of the establishment there, by the Du Pont de Nemours and Company, of a plant for the manufacture of explosives used in the war, employing a large number of artisans and laborers, drawn from all nationalities, and had, at the time of the armistice, somewhere between 25,000 and 45,000 employees.

"The signing of the armistice November 11, 1918, resulted, for the time being, as an overwhelming disaster of Hopewell, which involved not only individuals but almost the whole community.   This 'Wonder City' had at the time a population variously estimated at from 25,000 to 40,000.   The DuPont plant closed down about three weeks after the armistice and these people were thrown out of employment.   Immediately they packed their effects and departed—many with their families.   Many merchants closed their stores and packed and removed their goods and families away. Business almost stopped and the streets were deserted. The evidence shows that there were runs on all of the banks, caused by withdrawals of deposits by those leaving the city.   Two of the banks—the National and the Virginia State Bank—survived the drain upon their funds.   The latter, so lauded by some of the witnesses, was insolvent at the time these depositions were taken, and has since gone into the hands of a receiver.

*   *   *   *   *   *   *   *   *

"The evidence shows that the administrator, in making the deposit in the Peoples Bank, acted in good faith, in the exercise of a fair discretion, and in the same manner he probably would have acted if the subject had been his own property and not held in trust. Your commissioner is, therefore, of opinion that he ought not to be held responsible for the loss of the said $10,000.00."

*Sands & Williams*, for the plaintiff in error.

*James Otho Heflin*, for the defendants in error.


SIMS, P., after making the foregoing statement, delivered the following opinion of the court:

The questions presented for decision by the assignments of error will be disposed of in their order as stated.

[1]· 1. Was the administrator guilty of a *devastavit* in giving the credit he gave to Berglass, for the $10,000.00 balance owing by the latter for the goods of the estate sold to Berglass by the administrator, at public auction, on the terms of all cash, but with which terms Berglass found himself unable to comply?

The question must be answered in the negative.

[2] Section 5381 of the Code (1919), so far as material, provides as follows:   "Of the goods   *   *   the personal representative shall sell, as soon as convenient, at public auction, such as are likely to be impaired in value by keeping, *giving a reasonable credit* (except for small sums), taking bond with good security."   (Italics supplied.)

This statute has been in force in the same form since the Code of 1849, section 16, page 543, and was theretofore the same in substance back to 1 Revised Code of 1819, section 47, page 387.

This statute must be regarded as having authorized the sale, and also, in equity certainly, the credit in question, given as stated, if the length of the credit was "reasonable" and the security taken was regarded as "good security," at the time, by the administrator, acting in good faith and with reasonable diligence, that is, acting in the exercise of a fair discretion and in the same manner that a reasonably prudent business man would have acted under the same circumstances had the subject been his own property. That the administrator did so act and so regard the security at the time, clearly appears from the evidence.

The circumstance that the security taken was not a "bond" is immaterial, certainly in equity, if the security was of the character just mentioned.

In *Elliott* v. *Carter*, 9 Gratt. (50 Va.) 541, this is said: "With regard to the rules by which trustees should be governed in the management of trust funds, the laying out of trust money in securities, or allowing trust money to remain in the hands of those from whom it is owing, Lord Hardwick remarked (*Ex parte Belchier*, Amb. R. 219), that these rules should not be laid down with such strictness as to strike terror into mankind acting for the benefit of others and not their own. In the case of *Knight* v. *Lord Plymouth*, 3 Atk. R. 480, s. c. 1 Dickens' R. 126, the same learned judge says: 'Suppose a trustee having in his hands a considerable sum of money places it out, for the benefit of the *cestui que trust,* * * on security at the time apparently good, but which afterwards turns out not to be so, was there

ever an instance of the trustee being made to answer for the actual sum so placed? I answer no'."

[3] The opinion then reviews other English cases, refers to the observations of Judge Story on the subject and the holdings of the New York court in two cases, in which Chancellor Kent delivered the opinions, which authorities are, on the whole, to the effect that administrators, executors and other trustees are not to be held personally responsible for any loss of the trust property or funds where there is no just imputation of *mala fides* on their part, and the fault is at most but an error of judgment, or a want of unusual sharpsighted vigilance, *i. e.*, where the fiduciary has acted in good faith, with fair discretion and in a manner in which a reasonably prudent business man would have acted, under the same circumstances, had the subject been his own property; and has not been guilty of gross negligence or premeditated and fraudulent conduct.

And the opinion, thereupon, concludes the consideration of the subject by saying, in substance, that a different and more stringent rule than that prevailing in England and New York had not been adopted in Virginia, and adds the following: "And I very much doubt whether a wise policy would ever require more of a trustee than that he should act in good faith and with the same prudence and discretion that he is accustomed to exercise in the management of his own affairs.  *  *  I should not feel disposed to extend the responsibilities of trustees beyond the limits by which they would seem to be bounded in the cases to which I have referred, and where they have intended to discharge their duties fairly, I think they should be treated with tenderness, and due caution taken not to hold them liable upon slight or uncertain grounds, lest, by a different policy, men of integrity and who would be

actuated by proper views, may be deterred from taking upon themselves an office so necessary in the concerns of life, from fear of the anxiety, trouble and risk which it involves."

And such has, since such leading case on the subject, been the uniform holding of this court down to the present time. See *Davis* v. *Harmon*, 21 Gratt. (62 Va.) 194; *Myers* v. *Zetelle*, 21 Gratt. (62 Va.) 733, 753; *Hale* v. *Wall*, 22 Gratt. (63 Va.) 424; *Parsley* v. *Martin*, 77 Va. 376, 46 Am. Rep. 733; *Mecklenburg County* v. *Beales*, 111 Va. 691, 69 S. E. 1032, 36 L. R. A. (N. S.) 285; *Shepherd* v. *Darling*, 120 Va. 586, 91 S. E. 737— to mention only a few of the Virginia cases. And the same has been the uniform holding of the Supreme Court. See *Taylor* v. *Benham*, 5 How. (U. S.) 233, 12 L. Ed. 130; *Lamar* v. *Micon*, 112 U. S. 452, 5 Sup. Ct. 221, 28 L. Ed. 751.

It is earnestly urged in argument for the appellees that the administrator rendered himself personally liable in the instant case by his extension of credit to the purchaser of the goods, by which the administrator lost control of the $10,000.00 during the time given for its payment; and the following authorities are cited and relied on upon this subject, namely: Note to case of *Chancellor* v. *Chancellor*, 27 Am. & Eng. Ann. Cas. 1915-C, p. 50; *Fidelity, etc., Co.* v. *Butler*, 130 Ga. 225, 60 S. E. 851, 16 L. R. A. 994; 1 Perry on Trusts (3rd ed.), sec. 443; *McCollister* v. *Bishop*, 78 Minn. 228, 80 N. W. 1118; *Corcoran* v. *Kostrometinoff*, 164 Fed. 685, 91 C. C. A. 619, 21 L. R. A. (N. S.) 399; *In re Wood*, 159 Cal. 446, 114 Pac. 992, 36 L. R. A. (N. S.) 252; 18 Cyc. 207, 237. But these authorities all involve cases where the fiduciary had actual custody and control of the money in question, and had no authority to part with such control for any moment of time, and the

fiduciary, without any authority so to do, parted with that control, either by confiding it in part to another, by way of creating a joint control shared with another person without any authority in the premises, or by depositing the money in bank for a fixed time without any authority to do so, or the like. They have no application to a case, such as the instant case, where the fiduciary at no time had the money in question in actual custody and control, and where all that the fiduciary did was to extend a reasonable credit upon security at the time apparently good for money owing to the estate for goods sold as aforesaid, which the administrator had the authority to do, under the circumstances, as aforesaid, and which he did, acting in good faith and otherwise as aforesaid, for the very purpose of getting such money into his custody and control.

[4] 2. Did the decree under review err in not allowing the administrator any commissions on the $10,000.00 (for which he gave credit to the purchaser of goods at the sale as aforesaid, and which never came into the hands of the administrator), except upon the condition that the $10,000.00 be in fact paid to the estate by him or his surety?

The question must be answered in the negative.

[5] The commission to which an administrator is entitled is a commission on "receipts," Code 1919, section 5425, not on sales, for which the purchase price is never collected by him.

[6] 3. Did the decree under review err in not allowing the administrator credit for the full amount paid by him prior to the expiration of twelve months from his qualification and prior to his having obtained protection from personal liability as provided for by statute, to the holders of certain notes of the decedent in full payment of such notes, such payment being in ex-

cess of the *pro rata* share of the debts represented by such notes of the assets which were found to be in the hands of the administrator when his accounts were settled and an account of debts was stated according to law?

The question must be answered in the negative.

[7] In *Bliss* v. *Spencer*, 125 Va. 36, at p. 56 (99 S. E. 593, 599, 5 A. L. R. 619), this is said: "Under the statute law of Virginia the personal estate (as is also the real estate) of a decedent is expressly made assets for the payment of his debts. And where there is insufficient" (erroneously printed "sufficient" in the report of the case) " personal estate to pay all debts, the administrator, although he may have no actual notice of their existence, takes the risk of personal liability for payment of debts, if he distributes the personal estate before awaiting the expiration of the twelve months period allowed by statute in Virginia for presentation of debts and before thus obtaining protection from personal liability therefor, by refunding bonds, or before such protection is afforded him by order of court under the statute in such case made and provided, unless the creditor's laches, or other conduct thereafter, should bar the demand. Sections 2706, 2707, 2708 of the Code" (of 1904, being sections 5437, 5438, 5439 of Code of 1919); "7 Am. & Eng. Ency. Law (1st ed.), pp. 318-319 and note 1 and authorities cited."

We are of opinion that, where there are creditors, and where the administrator has not, but merely expects to have, in hand, or that there will be from some other source, sufficient assets to pay all debts, and, from any cause whatever, other than *vis major*, there is not such sufficiency of assets, what is said in *Bliss* v. *Spencer*, just quoted, is applicable, with respect to the personal liability of an administrator for such over payments as

he may make, before awaiting the expiration of the twelve months period aforesaid and before obtaining the protection aforesaid as provided by statute, of or on account of any debts, beyond the true *pro rata* share of such debts, of the funds which may turn out to be in hand for distribution, although the administrator may in good faith believe, at the time of such payments, that he will thereafter get in hand sufficient funds, or that there will be sufficient funds from some other source, to pay all debts in full.

The only Virginia authority cited for the plaintiff to sustain a contrary view to that just expressed is *Braxton* v. *Winslow*, 4 Call (8 Va.) 308. But an examination of that case shows that it holds merely this, as stated in the head-note: "Paying debts of inferior dignity is not a *devastavit*, if the executor retains assets enough to pay those of higher rank;" which, in substance, sustains instead of being contrary to our views of the law on the subject. As stated in the report of the case, at page 309: "*   *   there was no proof that there were not assets enough left to satisfy the judgment and bill of exchange"—the debts left unpaid by the executor at the time he made the distribution in question in payment of another debt of inferior dignity. In the opinion of the court, delivered by Chancellor Wythe, at page 317, this is said: "*   *   the mere act of paying debts of inferior dignity, as was done in this case, is not a *devastavit*, if he retains assets to pay those of higher grade   *   *."

There are only two other authorities cited for the plaintiff on the subject under consideration, namely, two cases from South Carolina, *Swift* v. *Miles*, 2 Rich. Eq. 147, and *Hinton* v. *Kennedy*, 3 S. C. 459.

In *Swift* v. *Miles*, there were not funds enough in the hands of the administrator to pay all debts; he applied

the funds in his hands to the payment of simple contract debts, leaving specialty debts unpaid, with the expectation that they would be paid out of proceeds of the real estate of the decedent, the realty being sufficient for that purpose. Afterwards, in a partition suit, to which the administrator was a party, a sufficient fund from the proceeds of sale of the real estate was reserved in the hands of the master to pay the specialty debts as they then stood, but, because of an accumulation of interest and costs, this fund proved insufficient to satisfy the specialty debts in full. Held, that the administrator was guilty of a *devastavit,* and that he and his sureties were liable for the deficit. This is, in principle, the same holding as that of the court below and of ourselves in the instant case.

In *Hinton* v. *Kennedy,* the estate was entirely solvent, and the administrator, at the time he paid the simple contract debts, reserved in his hands ample assets to pay the specialty debts; but afterwards so large a portion of such assets was destroyed by *vis major, i. e.,* by the liberation of the slaves during the civil war, etc., that the reserved assets, through no fault of the administrator, proved insufficient to pay the specialty debts. *Held,* That the administrator, while guilty of a technical *devastavit,* would not be held liable for the deficit, under the circumstances—the *vis major* being the cause of the deficit. There is nothing in this holding contrary to the holding of the court below and of ourselves above set out.

For the reasons stated above, the decree under review will be reversed, in so far as it holds that the administrator and his said surety are liable for the $10,000.00 loss above mentioned and interest thereon, and in so far as the balance found in the hands of the administrator is arrived at by including such $10,000.00.

In all other respects the decree will be affirmed. Costs in this court will be decreed in favor of the defendants in the court below, the appellants here, as the parties substantially prevailing upon the appeal. And the cause will be remanded for further proceedings not in conflict with the views expressed in this opinion.

*Reversed in part, affirmed in part, and remanded.*