# Richmond

## PAUL M. STROTHER v. LYNCHBURG TRUST AND SAVINGS BANK AND W. P. OWEN.

January 15, 1931.

Present, Campbell, Holt, Epes, Hudgins and Gregory, JJ.

*Thomas J. Williams,* for the appellant.

*T. J. O'Brien, Fred Harper* and *Caskie, Frost & Coleman,* for the appellees.

CAMPBELL, J., delivered the opinion of the court.

This appeal involves no disputed questions of fact. The sole question to be answered is one of law.

Paul M. Strother and his brother, William, infants, inherited from their father a certain house and lot situated in Bedford county. Upon attaining his majority, William M. Strother instituted suit to have confirmed by the court the offer of W. P. Owen to purchase the property at the price of $4,000.00. Mayo C. Brown, now serving a penitentiary term for embezzlement, was attorney for W. M. Strother, while appellant was represented by a guardian *ad litem*. The chancery court accepted the offer of Owen, and pursuant to the terms of agreement entered a decree providing, "that Mayo C. Brown be and he is hereby appointed commissioner for the purpose, together with William M. Strother and his wife, to convey the said property to W. P. Owen, taking from the said W. P. Owen coupon bonds for the deferred payment, with interest payable semi-annually, secured by the proper deed of trust, and one-half part of said bonds to the extent of $2,000.00, less one-half of the costs of this suit, shall be delivered to the said infant defendant, Paul Strother, when he becomes of age. It is further ordered that the cash payment of $750.00 be made direct to William M. Strother, who is of age and who will settle with Mayo C. Brown for his services in this suit  *  *  *." At the time of the institution of the partition suit appellant was a resident of New Jersey. Brown was the administrator of the ancestor's estate and guardian for appellant.

On November 3, 1927, Brown, contrary to the terms of the decree which provided for a delivery of the note when appellant attained his majority, forwarded to appellant the $2,000.00 note with the suggestion that if appellant wished to negotiate the note he indorse same and return it to him. Upon the return of the note indorsed by appellant, Brown secured from the appellee bank a personal loan for $2,200.00 and deposited the note of appellant as collateral

security, representing to the bank that he was the owner thereof. Before reaching his majority appellant discovered the embezzlement of the money by Brown and promptly notified the bank and Owen of the fraud and repudiated his indorsement of the note. Attaining his majority on September 17, 1928, appellant again notified the bank of his repudiation of his indorsement, and upon the refusal of the bank to make restitution, instituted this suit to disaffirm the contract of indorsement and to recover possession of the note. The ruling of the chancellor was in favor of the bank and Owen (who is merely a nominal party), and a decree was entered declaring the bank to be the legal holder of the note and entitled to collect from Owen the amount due by him.

A most interesting discussion of the question involving the rights and liabilities of an infant in regard to contracts made by him is to be found in an exhaustive note by Mr. Freeman, following the case of *Craig* v. *Van Bebber*, 18 Am. St. Rep. 573. It is there said: "There is, perhaps, no subject of the law about which there has been more apparent as well as real conflict of opinion than upon the effect to be given to the contracts of infants."

At common law the contracts of infants were divided into three classes—void, voidable and valid. Vol. 1 Minor's Inst. (3rd ed.) pages 521–529.

The decisions regarding the status of an infant were conflicting, and not until the decision of this court in *Mustard* v. *Wohlford*, 15 Gratt. (56 Va.) 329, 76 Am. Dec. 209, was his status definitely determined in Virginia. That decision firmly established the doctrine that the acts and contracts of infants generally are voidable and an infant has the right of election to avow or disaffirm.

In *Mustard* v. *Wohlford, supra,* Judge Moncure said:

"The court is of opinion that the contract of the 16th of January, 1852, between Nisewander and the appellant,

though made when the former was under age, and when the fact was known to the appellant, was not a void contract, but only voidable, and subject to be affirmed or disaffirmed by the former after his arrival at age. 'The tendency of the modern decisions (says Chancellor Kent) is in favor of the reasonableness and policy of a very liberal extension of the rule, that the acts and contracts of infants should be deemed voidable only, and subject to their election, when they become of age, either to affirm or disavow them.' 2 Kent. Com. 235. The authorities on this subject are fully collected in the valuable notes of Hare & Wallace, appended to the case of *Tucker, &c.* v. *Moreland,* in 1 American Leading Cases, edition of 1857, pages 224–267. And from the numerous decisions which have been had in this country, the annotators deduce the following rule, as one that is subject to no exceptions. 'The only contract binding on an infant is the implied contract for necessaries; the only act which he is under a legal capacity to perform is the appointment of an attorney; all other acts and contracts, executed or executory, are voidable or confirmable by him at his election.' *Id.* 244."

In an effort to harmonize the conflicting decisions of the various States regarding not only the rights and liabilities of infants but the rights and liabilities of corporations and adults as well, under both the common law and law merchant, the uniform negotiable instruments law, based upon the English bill of exchange act, was drafted by a commission headed by Judge Brewster and proposed to the several States of the Union for enactment. By an act passed at the 1897–98 session of the General Assembly, Virginia, with some minor exceptions, adopted the uniform law. Among the provisions contained therein is this section: "The indorsement or assignment of the instrument by a corporation or by an infant passes the property therein notwithstanding that from want of capacity the

corporation or infant may incur no liability thereon."
Section 5584, Michie's Code.

█ The contention of the appellant is that the legislature
did not intend to abrogate the rule enunciated in *Mustard*
v. *Wohlford, supra,* but only intended to pass title to the
instrument in the event the infant failed to disaffirm his
indorsement. It is the contention of the bank that the
indorsement under the statute is an executed contract; that
it passes the property the moment the indorsed paper is
delivered; that it is valid in the hand of a *bona fide* holder
for value; that the act clearly denotes the intention of the
legislature to depart from the "antiquated" common-law
rule "which gives such protection to infants as often to
result in what has been called 'infantile paralysis.' "

The above quotation is to be found in a discussion of the
involved section in Brannan's Negotiable Instruments Law,
page 180. The author concludes his discussion with this
language: "It is better to bring the negotiable instrument
situation within the analogy of a broad legislative principle
rather than within the judicial principle as to chattels,
which was undesirable while it lasted and has been super-
seded by a carefully drawn statute adopted by numerous
States."

That pronouncement has not met with universal favor.
In a note appended to the preface, page 179, we read that
Professor J. B. Ames, of Harvard, is of opinion that the
language of the section, unlike the English act, is ambig-
uous. The corresponding section in the English act pro-
vides:

"Where a bill is drawn or indorsed by an infant, minor,
or corporation having no capacity or power to incur liability
on a bill, the drawing or indorsement entitles the holder to
receive payment of the bill and to enforce it against any
other party thereto."

██ Our opinion is that when the American act and

the English act are compared it is apparent that the former act only intended to say that one who held such an indorsement had title to the property unassailable by the maker and all the previous indorsers of the instrument, but it was not intended to destroy the common-law right of the infant to plead infancy and avoid his act after maturity. The language employed in the section does not import an intention to radically change the status of an infant with reference to his contracts relative to negotiable paper. If such a conclusion had been intended by the draftsmen of the act, the intention would have been manifested by the employment of apt language about which there could have been no room for argument. It was competent for the legislature to fix an age limit less than twenty-one years and invest the infant with an unrestricted ability to contract. In fact, the legislature has exercised its prerogative in this respect.

Section 5338-a provides that an infant wife or husband may dispose of their dower or curtesy rights in the consort's property.

Section 6108 provides that an infant transacting business as a trader, who shall fail to disclose his infancy, by specific methods set out, shall be liable for his debts to the extent of the property acquired or used in such business, and no plea of infancy shall be allowed.

Section 2851 provides that an infant eighteen years of age or over may be appointed as a notary public and enter into the bond required; and that such notaries shall be liable for their official acts and omissions as if they were of full age.

Section 5228 provides that an infant eighteen years of age or over may dispose of personal property by will.

In those statutes the legislature in its wisdom deemed it advisable to make property rights paramount to infants' rights. By explicit and unambiguous language this change was wrought. No such language is used in the

section under review. It is a canon of construction that: "A statute will not be construed as changing the common-law rule beyond what is expressly stated or necessarily implied, and in doubtful cases the presumption is that no change was intended." *Johnston* v. *Knipe*, 260 Pa. 504, 105 Atl. 705, L. R. A. 1918E, 1042.

■ For ages an infant has been the favorite ward of courts of equity. Those who deal with him do so at their peril. In law there is no "twilight zone" between an infant ten years of age and an infant on the verge of maturity. While it may be consonant with the modern idea of progress that banks and others dealing in negotiable paper should be permitted to deal at arm's length with infants, regardless of age, such a conclusion ignores the baneful results should an infant of tender years be thus placed at the mercy of avaricious or unscrupulous persons.

There are numerous cases and text books dealing generally with the effect of an infant's indorsement of promissory notes and bills of exchange.

In 22 Cyc., page 588, it is said:

"An infant's indorsement of a promissory note being voidable only by himself, or his representatives, passes the title as between the indorsee and the maker and entitles the former to sue the latter on the note;" citing *Frazier* v. *Massey*, 14 Ind. 382; *Hardy* v. *Waters*, 38 Me. 450; *Nightingale* v. *Withington*, 15 Mass. 272, 8 Am. Dec. 101; *Willis* v. *Twambly*, 13 Mass. 204; *Briggs* v. *McCabe*, 27 Ind. 327, 89 Am. Dec. 503.

In 4 Amer. & Eng. Ency. of Law, page 167, we read:

"While an infant cannot himself become liable on a bill or note, he may, by his indorsement of a bill or note payable or indorsed to him, transfer title to his indorsee."

In Freeman's note to *Craig* v. *Van Bebber, supra*, it is said:

"The indorsement of a bill of exchange or promissory

■

note by an infant transfers the title, and is simply voidable, and since the privilege of infancy is personal, the infancy of the payee of a bill or note is no defense to an action on the paper by an indorsee against the acceptor, drawer or maker."

A pioneer case (in fact, the only case we have found) construing section 22, Article 1, of the negotiable instruments law (Code, section 5584) is the case of *Murray* v. *Thompson*, 136 Tenn. 118, 188 S. W. 578, 579, L. R. A. 1917-B, page 1172. In holding that the common-law rule was not abrogated by the enactment of section 22 of the negotiable instruments law, Judge Williams said:

"It was to make certain and uniform the law on this point that section 22 was embodied in the negotiable instruments act. In stipulating that the indorsement of the instrument by an infant 'passes property therein,' it was meant to provide that the contract of indorsement is not void, and that his indorsee has the right to enforce payment from all parties prior to the infant indorser. The incapacity of the minor cannot be availed of by prior parties.

"It was not intended to provide that the indorsee should become the owner of the instrument by title indefeasible as against the infant, or to make the act of indorsement an irrevocable one.

"The act does not concern the right of such an indorser to disaffirm under the rules of the law of infancy. The words, 'passes the property therein,' if given a meaning that would deny that right in respect of a contract of indorsement, would deprive the infant of the right to reinvest in himself the title to the instrument against a holder who had knowledge of the indorser's infancy. The quoted words are not qualified so as to save his rights in such assumed case. It must be admitted that the legislature did not intend any such radical and grossly inequitable departure from a settled and salutary rule of law."

That case is cited with approval by Dr. Lile in his Bigelow on Bills, Notes and Checks, page 425. In the text, page 427, we read:

"The statute adopts the generally accepted rule of the unwritten law as to the transfer of title by an *infant* or *corporation*, though making no reference to the *lunatic:*

" 'The indorsement or assignment of the instrument by a corporation or by an infant passes the property therein, notwithstanding that from want of capacity the corporation or infant may incur no liability thereon.'

"The purpose and effect of this section are merely to affirm the unwritten rule that *title* to the instrument may be *traced through* such an indorsement. The section in no wise affects the *liability* of the corporation or infant, or the right of either, where the right exists, to disaffirm and recover the instrument in whosesoever hands it may be."

For the reasons stated it follows that we are of opinion that the effect of the disaffirmance of his contract of indorsement by the appellant was to extinguish any interest the appellee, Lynchburg Trust and Savings Bank, acquired under it; that the title to the note executed by W. P. Owen is in appellant, and he is entitled to have the note redelivered to him by the bank. The decree appealed from is erroneous and must be reversed, and this court will enter such decree as the corporation court should have entered.

*Reversed.*