# Staunton

VERDIE LEE CLEMONS, AN INFANT v. W. CLYDE DENNIS, GUARDIAN, ET AL.

September 19, 1935.

Present, All the Justices.

The opinion states the case.

*Roland E. Chase,* for the appellant.

*H. Claude Pobst,* for the appellees.

CAMPBELL, C. J., delivered the opinion of the court.

This suit was instituted by Mrs. Mary Clemons Estep as the next friend of her infant daughter, Verdie Lee Clemons, against W. Clyde Dennis, the duly appointed guardian of Verdie Lee Clemons, and the Fidelity and Casualty Company of New York, surety on the bond of Dennis, guardian.

These are the facts: Mrs. Clemons, who is now Mrs. Estep, as administratrix of her deceased husband Henry Clemons, the father of Verdie Lee Clemons, recovered a judgment in the sum of $5,000 against Nelson, Chase and Gilbert Company, for damages arising out of an accident which resulted in the death of Henry Clemons. W. Clyde Dennis and associates, as counsel for the administratrix, received the sum of $2,500, and the residue was apportioned between the mother and daughter as follows: $833.33 to the widow, and the balance to the daughter. There being no guardian for the infant, Dennis, to whom the money had been paid on the 25th day of August, 1930, deposited in the Bank of Grundy the sum held by him, to the credit of "W. Clyde Dennis, Spl." The money thus designated "Special" was placed by the cashier to the credit of Dennis in the savings account and drew interest at the rate of 4% until the failure of the bank on the 18th day of May, 1931.

On the 27th day of February, 1931, Dennis, apparently on motion of the mother, was appointed by the clerk of the circuit court as guardian for Verdie Lee Clemons who was at the time under two years of age. On the day of his appointment as guardian, Dennis instituted a suit in the Circuit Court of Buchanan county, seeking confirmation of a contract which had been entered into by and between Martha and F. E. Morgan and Joseph Dotson and May Clemons and Dennis, guardian of Verdie Lee Clemons,

for the purchase of a tract of land for the benefit of the infant. A guardian ad litem was appointed for the infant, an answer was filed by him and deposition duly taken as to the value of the land and the propriety of the investment. When the cause came on to be heard, the court appointed F. W. Smith a commissioner to investigate and report as to the condition of the title of the land proposed to be purchased. After a period of time the commissioner filed an adverse report as to the title, and subsequently the court refused to confirm the contract. In the meantime, to-wit, on the 18th day of May, 1931, the Bank of Grundy was closed and is now in the hands of a receiver.

It appears in evidence that immediately after Dennis was appointed guardian for Verdie Lee Clemons he went to the bank and requested the cashier to change the deposit of the funds from "W. Clyde Dennis, Spl." to "W. Clyde Dennis, Guardian." Mr. Belcher, the cashier, informed Dennis that the change in the account would be made. Pursuant to request, Dennis left his passbook with Belcher, but as a matter of fact, the transfer was not entered upon the books of the bank. It was further shown that no monthly statements were sent to Dennis, as it was not customary to send statements where deposits were on savings account. That Dennis was unaware of the bank's condition is evinced by the fact that he in his individual capacity deposited money in the bank on May the 16th, the last day the bank was open for business.

The prayer of the bill is that the guardian be removed and that a judgment be entered against the guardian and his surety for the amount which went into his hands as guardian of Verdie Lee Clemons. The court was of opinion and so decreed that the relief prayed for in the bill should be denied. It is from that decree that this appeal was allowed.

The facts as detailed are undisputed. There is no suggestion of *mala fides* on the part of Dennis. Therefore, the only question involved is whether or not Dennis is liable as a matter of law for the loss of the infant's funds.

■ While it is true, as held by this court in *Strother* v. *Lynchburg Trust, etc., Bank,* 155 Va. 826, 156 S. E. 426, 73 A. L. R. 166, that infants are the favorites of a court of equity, it is also true, as held in *Watkins* v. *Stewart, etc.,* 78 Va. 111, 114, that courts of equity look with indulgence on the acts of fiduciaries, and if it is manifest that they have acted in good faith in the exercise of a fair discretion, and in the same manner in which a prudent man would act in regard to his own property, they will not be held liable for any loss which may occur.

In *Knight* v. *Lord Plymouth,* 1 Dickens 126, Lord Hardwicke said: "If there is no *mala fides,*—nothing wilful in the conduct of the trustee, the court will always favor him. For as a trust is an office necessary in the concerns between man and man, and which, if faithfully discharged, is attended with no small degree of trouble and anxiety, it is an act of great kindness in any one to accept it; to add hazard or risk to that trouble, and to subject a trustee to losses which he could not foresee, and consequently not prevent, would be a manifest hardship, and would be deterring every one from accepting so necessary an office."

In the principal case of *Elliott* v. *Carter, et al,* 9 Gratt. (50 Va.) 541, 559, the court said:

"In Virginia it is true, for the most part, some compensation is allowed executors and other trustees for their services, yet I am not aware that any different or more stringent rule has been adopted by which the measure of their responsibilities is to be determined, than that which seems to prevail in the chancery of England and New York; and I very much doubt whether a wise policy should ever require more of a trustee than that he should act in good faith and with the same prudence and discretion that he is accustomed to exercise in the management of his own affairs. A trust is an office of honor, confidence and friendship; and if more than what I have indicated were required of the trustee, it would cease to be of that character, and would become one of hazard, speculation and profit; and the evils and inconveniences alluded to by the

learned judges whose opinions I have before cited would speedily be realized. As at present advised, therefore, I should not feel disposed to extend the responsibilities of trustees beyond the limits by which they would seem to be bounded in the cases to which I have referred; and where they have intended to discharge their duties fairly, I think they should be treated with tenderness, and due caution taken not to hold them liable upon slight or uncertain grounds, lest, by a different policy, men of integrity and who would be actuated by the proper views, may be deterred from taking upon themselves an office so necessary in the concerns of life, from fear of the anxiety, trouble and risk which it involves."

In accord with the general doctrine applicable to trustees, laid down in the above case, the court specifically held in *Parsley's Adm'r* v. *Martin et al,* 77 Va. 376, 46 Am. Rep. 733, that the same doctrine should be applied in the case of a guardian. There we read:

"A *bona fide* deposit of the money of his wards by the guardian in his own individual name, provided that it can be shown that it was in fact the money of his wards, will acquit and protect the guardian from the responsibility of loss which ensues not by the form or designation of the deposit, but which has been lost by the general and universal destruction of the whole currency and all the banking and financial interests of the state. * * *

"In this deposit there was no mingling of this fund with Parsley's own money; it was kept as a special fund; he made no profit and derived no use or advantage from it; he deposited the same kind if not the very same money which he received; he deposited it when he received it. It was lost by no fault or default of his and not because of the form of the deposit (for it would have been equally lost if the deposit had been in his name as guardian). * * *

"Cases in which a fiduciary has been held to responsibility for the loss of the money of his ward or of an estate, which had been deposited in his own name, have all been those in which the fiduciary fund was mingled with his

own private or personal funds or used by him for his own purposes, or where the deposit was made in depreciated money as compared with the money received. This was the case—this the vice which infected the case of *Vaiden and als* v. *Stubblefield's Ex'or and als,* 28 Gratt. (69 Va.) 153; and we believe that no case has ever been decided or recognized as authority in this state which would throw the loss of the fund in these causes upon the guardian, Parsley, or upon his estate."

That the doctrine is firmly embedded in our jurisprudence is shown by the pronouncement of this court in *County of Mecklenburg* v. *Beales, Treasurer,* 111 Va. 691, 69 S. E. 1032, 1033, 36 L. R. A. (N. S.) 285, which was approved in *Herelick* v. *Southern Dry Goods & Notion Co.,* 139 Va. 121, 131, 123 S. E. 529. In the *Mecklenburg Case* Judge Buchanan said:

"The question of the liability of executors, guardians, trustees and other fiduciaries for loss of funds by bank failures and otherwise has been frequently considered by this court, and the rule established that as to such a fiduciary, in handling private funds, he is not responsible for the loss resulting, where he has acted in good faith and in the exercise of a fair discretion, and in the same manner as he probably would have acted if the subject had been his own property and not held in trust."

In a careful examination of the record we do not find a word of evidence which even tends to show that Dennis knew of the impending insolvency of the bank when he requested the cashier to deposit the infant's funds to his credit as guardian. That being true, we find no basis for the contention of appellant that Dennis, guardian, was derelict in the performance of his legal duty to his ward, Verdie Lee Clemons.

There are other assignments of error which in our opinion are rendered immaterial by our ultimate conclusion to affirm the decree of the circuit court.

*Affirmed.*