## Staunton.

BARTON'S EX'OR v. RIDGEWAY'S ADM'R AND OTHERS.

OCTOBER 3, 1895.

1. COMMISSIONER OF COURT—*Loss of Funds—Good Faith.*—A commissioner who has acted in good faith, in the exercise of a fair discretion, and has not violated the orders of the court by which he was appointed, is not liable for the loss of funds placed in his hands.

2. COMMISSIONER OF COURT—*Loss of Funds—Case at Bar.*—A commissioner was appointed in November, 1861, to collect money and report it to the court at its next term. He collected the money and deposited it in a solvent bank of good commercial standing, to the credit of himself and his law partner. This account was kept for the fiduciary funds under the control of the firm and each of its members. No part of the money was used by the commissioner, or mingled with his individual funds. No term of the court for the transaction of business was held until after the war. In the meanwhile the commissioner died, and the bank was ruined and the money lost by the results of the war, which destroyed the whole currency of the country.

*Held :*

The commissioner was not liable for the loss.

Appeal from a decree of the Circuit Court of Frederick county pronounced July 15, 1895.

*Reversed.*

The opinion states the case.

*Robert T. Barton*, for the appellant.

*William L. Clark* and *R. E. Byrd*, for the appellee.

CARDWELL, J., delivered the opinion of the court.

It being reported to the Circuit Court of Frederick county, in the suit of *Stephenson* v. *Richard Ridgeway, R. S. Ridgeway, and others*, brought to enforce a judgment lien of the plaintiff against the lands of Richard Ridgeway, that one W. H. Seevers, as trustee in a deed of trust from Richard Ridgeway and R. S. Ridgeway, executed prior to Stephenson's judgment, to secure purchase money for the land, had sold a portion of the land conveyed in the deed; that there was a surplus of the purchase money amounting to $2,823.06; that this balance was represented by the three bonds of the purchaser of the land, David Clevenger, each for $941.02, dated August 6, 1860, payable twelve, eighteen, and twenty-four months from that date; that the bonds were then in the hands of George W. Seevers, teller of the Farmers Bank of Virginia, at Winchester; and that the trustee, W. H. Seevers, was a non-resident, the court entered its decree, which is as follows:

" It being suggested to the court that, since the institution of this suit, a sale has been made of a part of the lands referred to in the bill, by William H. Seevers, trustee in a deed of trust bearing date prior to plaintiff's judgment; but that, after paying said trust debt, there remains a clear excess or surplus of proceeds of sale of $2,823.06, applicable to the purposes of this suit, and that, in the absence of the trustee, who is a non-resident, it will be proper to proceed for the securing and safe-keeping of such surplus, it is, this 14th day of November, 1861, adjudged, ordered, and decreed that David W. Barton be, and he is hereby, appointed special receiver to collect said surplus, and, after paying therefrom the costs and expenses, have the remainder forthcoming at the next term, subject to such order as the court shall then

make; the said special receiver giving bond in the penalty of $6,000, with security approved by the clerk, conditioned according to law."

D. W. Barton qualified as the receiver of the court, executing his bond as directed, with Phillip Williams as his surety, and collected the bonds of Clevenger, a part of which, however, had been collected by him prior to the decree of November 14, 1861, but whether by authority of Seevers, trustee, or whom, does not appear. At all events, the money as collected was deposited by him in the Bank of the Valley, at Winchester, to the credit of the account of the law firm of Barton & Williams, composed of D. W. Barton and P. Williams. The last collection was deposited January 22, 1862.

The Federal army entered Winchester early in March, 1862, overthrowing the civil government, so that the "next term" of the court—March, 1862, referred to in the decree—was never held, and no other term until after the restoration of peace in 1865, except a short and purely perfunctory term in November, 1863; and, at the approach of the public enemy, the Bank of the Valley fled with its assets to Farm-ville, Va., where it remained until the close of the war, at which time, as a result of the war, the bank failed, and the money perished with it. In the mean time, on July 7, 1863, D. W. Barton died, and his law office in Winchester having been taken possession of by the Federal troops, many of his papers were destroyed, and the rest mutilated and confused.

No other steps were taken in this cause, so far as the record shows, until the June term of the court, 1869, when there was a decree directing the settlement of the account of D. W. Barton, who, it is recited in the decree, had been at a former term of the court appointed a special receiver in the cause. In the mean time, on April 2, 1868, Phillip Wil-

liams, the then surviving partner of the firm of Barton & Williams, died.

No report, it seems, of the account directed by the decree of June, 1869, was ever made; but, if made, was, on exceptions, wholly recommitted, and the cause remained with the commissioner for many years with this decree unexecuted.

At the November term, 1886, the complainant, John Stephenson, withdrew from the suit, and the decree dismissing his bill recited that he appeared in open court and entered into a distinct agreement with counsel for Barton's executor and Williams's administrator, whereby he released the respective estates of Barton and Williams from any and all liability to him on any account whatsoever; but the cause was afterwards proceeded in, under the style of the *Valley Bank of Virginia and Others* v. *Ridgeway's Administrator et als.* At the March term, 1888, R. S. Ridgeway, a defendant to the original bill, appeared for the first time in the cause, and presented his petition against R. T. Barton, executor of D. W. Barton, deceased, and the personal representatives of P. Williams, as surety on his bond, claiming one-half of the net proceeds arising from the sale of the land made by Seevers, which, as alleged, had gone into the hands of D. W. Barton, receiver, under the decree of November 14, 1861, and a decree was entered making petitioner a co-plaintiff in the cause, allowing his petition to be filed, and reviving the suit as to Barton's executor and Williams's administrator, with leave to them to file their answer to the petition.

The death of R. S. Ridgeway was suggested at the June term, 1889, and a decree entered reviving the cause in the name of P. C. Gore, sheriff of Frederick county, and as such administrator of R. S. Ridgeway, deceased, and ordering Commissioner Huck to settle the account of D. W. Barton, special receiver, as previously ordered, &c. The cause then dragged its slow length along—R. T. Barton, executor of

D. W. Barton, deceased, filing his answer at the June term, 1890—until February, 1895, when Commissioner Huck filed his report of a settlement of the account of D. W. Barton, the special receiver, showing the amount due from the receiver to the estate of R. S. Ridgeway, deceased, to be $3,192.80, including interest to April 1, 1884. To this report D. W. Barton's executor filed a number of exceptions; and the cause coming on to be heard at the July term, 1895, upon the report of the commissioner, the exceptions of Barton's executor thereto, the answer of Barton's executor to Ridgeway's petition, the general replication thereto, and the depositions of witnesses returned with the commissioner's report, the judge of the Circuit Court filed his written opinion in the cause, together with a statement correcting errors in the report of Commissioner Huck, fixing the amount due from the estate of D. W. Barton, deceased, to R. S. Ridgeway's administrator at $1,181.76, with interest thereon from the 1st day of January, 1863, till paid; and, overruling the exceptions to the commissioner's report, decreed that the claim of R. S. Ridgeway's administrator is a valid and subsisting claim against the estate of D. W. Barton, deceased, and against the surety on his bond as special receiver; that Ridgeway's administrator might assert and have his claim for this sum and interest audited in the pending suits in chancery of *D. W. Barton's Executor* v. *D. W. Barton's Devisees* and *P. Williams's Administrator* v. *P. Williams's Heirs*, and receive the payment of the same from the said estates being administered in said causes. From this decree an appeal was allowed D. W. Barton's executor to this court.

The executor of D. W. Barton contests the liability of his testator on the ground that there has been gross *laches* on the part of the petitioner, R. S. Ridgeway, and on the ground that the fund was lost without the fault of his testator. We do not deem it of importance to discuss the *laches* of R. S. Ridge-

way and his personal representative in the assertion of the claim attempted to be set up in this cause, for the case must be determined upon the all-absorbing question, whether, in equity and good conscience, the receiver, D. W. Barton, ought to be held responsible for the fund claimed by R. S. Ridgeway, and lost by the collapse of the bank in which it was placed.

As stated in the opinion of the learned judge of the court below, the money received by the receiver, Barton, was deposited in the Valley Bank to the general account of Barton & Williams; that there were numerous deposits on this account and checks thereon, but always an increasing balance in favor of Barton & Williams; that with the failure of the bank the money on deposit, some $15,000, was lost, which included the money collected by Barton, the receiver. The proof in the cause further shows that this account was the account to the credit of which all collections and fiduciary money received by either member of the firm were deposited, and that Williams and Barton each had a private account in the same bank, to the credit of which their respective private and personal funds were deposited.

There is some contention as to the character of the money received by Barton, the receiver, and deposited as stated, but it seems clear from the testimony in the record that it was either Confederate treasury notes, or money of no greater value.

In the case of *Elliott* v. *Carter*, &c., 9 Gratt. 541, 559, Judge Lee, in his able opinion, discussing the rules to govern in determining the liability of fiduciaries, says: " The fair result of the views which they present and the reasoning they adopt," (in the cases and opinions of learned judges examined by him,) " is, that where a trustee has acted in good faith, in the exercise of a fair discretion, and in the same manner in which he probably would have acted if the subject had been his own property and not held in trust, he ought not to be held responsi-

ble for any losses accruing in the management of the trust fund."

And again, in quoting from Lord Hardwicke, in the case of *Knight* v. *Lord Plimouth*, 3 Atk. R. 480, says: "If there was no *mala fides*, nothing wrongful in the conduct of the trustee; the court will always favor him. For as a trust is an office necessary in the concerns between man and man, and which, if faithfully discharged, is attended with no small degree of trouble and anxiety, it is an act of great kindness in any one to accept it. To add hazard or risk to that trouble, and subject a trustee to losses which he could not foresee, would be a manifest hardship, and would be deterring every one from accepting so necessary an office."

And, in quoting from Chancellor Kent, in the case of *Thompson* v. *Brown*, 4 John. Ch. R. 619, 628, says: "That where there is no just imputation of *mala fides*, and the fault is at most but an error of judgment and a want of sharp-sighted vigilance, it would have the appearance of great rigor, and be hardly reconciled with the doctrines of the court, to hold a trustee responsible."

The case of *Elliott* v. *Carter* was as follows: The executors of John Crawford offered land for sale at public auction, which was cried out to Pryor, a solvent and responsible person, who, before anything was done in execution of the contract, permitted Eubank to take his purchase, and Eubank gave his bonds for the purchase with a surety for the purchase money, both Eubank and the surety then being in good credit, and considered fully able to pay the amount. Before all the purchase money fell due Eubank and his surety failed, Eubank having paid but one of his bonds; and the executors filed a bill to subject the land in the hands of a purchaser from Eubank. After long delay the land was subjected and sold, but after applying the proceeds of sale there remained a large balance of purchase money due from Eubank. *Held:* That

the pecuniary standing of Eubank having been such at the time of the sale that if the land had been cried out to him the executors would have been well justified in executing the contract, and there being no *mala fides* on the part of the executors, they are not to be held liable for the balance of the purchase money.

The contention of Crawford's devisees in that case was that, as the executors did not take a deed of trust on the land sold to Eubank to secure the purchase money, they should be held responsible for the balance remaining unpaid after applying to the payment thereof the proceeds realized from the sale of the land, which fell far short of the payment of the purchase money due from Eubank to the executors, by reason of the great depreciation of the value of the land. But the court, upon all the facts in the case, being satisfied that the same result would have followed had the executors taken a deed of trust upon the land, decided that the executors could not be held bound.

The same reasoning applies to the case at bar. If Barton had deposited the fund received by him as receiver in the Valley Bank to the credit of himself as such, or to the credit of the court in the cause, there could have been no contention on the part of Ridgeway that he should be held liable for the money, and, had he so deposited the money, it would have been lost upon the collapse of the bank, as it has been. There is no suggestion in this record of *mala fides* on the part of Barton, the receiver. The bank in which he deposited this money was solvent, and its credit as high as any in the country. The firm of Barton & Williams were lawyers of high standing, and their solvency at that time was not questioned. The just, equitable, and humane rule, deducible from the reasoning of this court in the case of *Elliott v. Carter, supra,* is that where it does not appear that the fiduciary could and ought to have done something other than

what he did, the neglect of which resulted in the loss of the fund entrusted to him, he should not be held responsible. The only ground relied on here to hold the estate of Barton, the receiver, responsible for the fund claimed by R. S. Ridgeway, is that he did not deposit the money in bank, or ear-mark it, so that it could have been identified. Had he done this the result would have been the same. There is nothing whatever in this record to show that Barton received any benefit from this fund, or diverted it to his personal uses. A sum far in excess of the amount of this fund was to the credit of the account to which it was placed, and so remained until all was lost. It will be observed that the decree appointing the receiver, after stating that there was a certain sum of money applicable to the purpose of this suit, directed him to collect the fund, and, after paying therefrom the costs and expenses, to have the remainder forthcoming at the next term, subject to such order as the court should then make. The next term of the court referred to was never held, and no term was held until after the death of the receiver, and, we may say, till after the war. At that time there was nothing in the record to show that R. S. Ridgeway asserted a claim to any part of this fund ; so that, whatever the receiver might have done, he could not have relieved himself of the responsibility now sought to be placed upon him before the fund was absolutely lost.

In the case of *Parseley's Administrator* v. *Martin et als.,* 77 Va. 376, this court refused to hold Parseley, guardian, responsible for a fund belonging to his wards, deposited in bank to his individual credit and lost with the collapse of the bank at the end of the war, the court saying in its opinion : " A *bona fide* deposit of the money of his ward by the guardian, in his own individual name, *provided that it can be shown that it was in fact the money of his ward,* will acquit and protect a guardian from responsibility of loss which ensues,

not by the form or designation of the deposit, but which has
been lost by the general and universal destruction of the
whole currency and all the banking and financial interests
of the State." And the court further says (p. 383) : " Cases in
which a fiduciary has been held to a responsibility for the loss
of the money of his ward, or other estate, which had been
deposited in his own name, have all been those in which the
fiduciary fund was mingled with his own private or personal
fund, or used by him for his own purposes, or where the
deposit was made in depreciated money as compared with the
money received."

Upon the reasoning of the court in this case, Barton cannot
be held responsible for the fund received by him, and the
same may be said upon the reasoning of all similar cases that
we have been able to examine—notably the case of *Davis,
Com'r,* v. *Harman et als.,* 21 Gratt. 197, in which Davis, the
commissioner, had deposited funds of his trust in the bank in
his own name, and it was mixed and merged with his own
money and in his private bank account, and lost by the col-
lapse of the bank at the close of the war, just as the fund in
this case was lost; yet this court, in its opinion, concurred in
by all the judges, exonerated Davis, the commissioner, from
the loss. The reasoning of the court therein applies with all
its force here, viz. : " The loss here was not in consequence of
the deposit. It was not the failing of a bank, or the insol-
vency of a banker, but it was the sudden and irretrievable
destruction of the whole currency of the country, by the ter-
mination of the civil war, which had destroyed the very power
that created it. The thing deposited for safe-keeping, which
was the thing received, to-wit, Confederate money, had per-
ished without any fault anywhere, but had perished with the
overthrow of the government which had spoken it into ex-
istence. * * * It would be too rigorous and too unjust;
it would be in violation of those well-settled principles,

founded in reason and in conscience, which control the action of courts of equity, to hold that though the appellant has been guilty of no *mala fides*, no misconduct, no negligence, yet he is to be held responsible for a loss which he had no part in creating and no power to prevent. But that loss, we think, ought to fall upon those who were entitled to the fund that has perished."

· This is in perfect accord with the sound reasoning of this court in the case of *Elliott* v. *Carter, supra.*

After a most careful consideration of the evidence, and the authorities applicable in determining the question at issue in this case, we are of opinion that the decree appealed from is erroneous, and should be reversed and annulled; and this court will enter such decree herein as the Circuit Court should have entered, sustaining the exceptions of D. W. Barton's executor to Commissioner Huck's report, and dismissing the petition of R. S. Ridgeway's administrator.

*Reversed.*