Statement.

# �civilmonð.

COUNTY OF MECKLENBURG v. BEALES, TREASURER, AND OTHERS.

January 12, 1911.

Absent, Cardwell, J.

1. COUNTY TREASURERS—*Liability for Loss of Funds—Insolvency of Bank—Custom of Predecessors—Approval of County Authorities.*—If a county treasurer deposits county funds in a bank which he believes to be, and which is generally regarded as solvent, and the funds are lost by the insolvency of the bank, the loss falls on the treasurer and his surety, and not on the county. The deposit is his voluntary act, made for his own convenience, and is not required nor authorized by law. Neither the custom of his predecessors in office, however long continued, nor the approval of the county authorities, however formal, can have any effect on his liability.

2. COUNTY TREASURERS—*Public Funds—Insurers Against Loss.*—The legislation in this State on the subject of county treasurers manifests an intention on the part of the legislature to hold county treasurers to a strict accountability for the safety of public funds entrusted to their care, and the policy manifested by that legislation, as well as the weight of authority, require that they shall assume all risks of loss, and be accountable for all public funds which come into their hands, except in cases where the loss results from the act of God, or the public enemy, or possibly from some other overruling necessity.

Error to a judgment of the Circuit Court of Mecklenburg county in an action of debt on the official bond of Beales, treasurer. Judgment for the defendants. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*E. P. Buford* and *C. T. Baskerville*, for the plaintiff in error.

*C. T. Reeks* and *E. R. Williams*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is an action on the bond of a county treasurer to recover from him and his surety money chargeable to the treasurer on account of the general county levy, the general county road fund and the county dog tax, aggregating some twenty thousand dollars, lost by the insolvency of the Bank of Mecklenburg, in which he had deposited the same.

The defense relied on, in substance, is that in depositing the said public or county funds in that bank he was doing what his predecessors in office for many years had done, with the knowledge and at least implied approval of the county authorities; that the bank had been, and up to the time that it failed was regarded by careful and prudent business men and the public generally as a safe and solvent institution; that its officers were men of good reputation, having among its directors the attorney for the Commonwealth and three members of the board of supervisors of the county. If the facts relied on constitute a good defense, there is no question that they were satisfactorily established by the defendants.

Upon the trial of the cause, all matters of law and fact were submitted to the court for its decision, and judgment was rendered for the defendants.

The question which we are called on to determine is whether if a county treasurer deposits county funds in a bank which he believes to be, and which is generally regarded as solvent, and the funds are lost by the bank's insolvency, the loss falls on the treasurer and his surety or on the county. The question is one of first impression in this court, so far as the investigation of counsel or our own researches show, and one of much interest and importance. It is somewhat remarkable that in a Commonwealth as old as this, and whose people have suffered so greatly from the destruction of their

banking system by the civil war, from bank failures since, and the frequent default of sheriffs and treasurers in accounting for the public revenue, State and municipal, that the question of the liability of a public officer for public funds lost without negligence or fault on his part should not have been decided long since by the court of last resort.

The question of the liability of executors, guardians, trustees and other fiduciaries for loss of funds by bank failures and otherwise has been frequently considered by this court, and the rule established that as to such a fiduciary, in handling private funds, he is not responsible for the loss resulting, where he has acted in good faith and in the exercise of a fair discretion, and in the same manner as he probably would have acted if the subject had been his own property and not held in trust. See generally, *Elliott* v. *Carter*, 9 Gratt. 541; *Davis* v. *Harman*, 21 Gratt. 194; *Myers* v. *Zetelle*, 21 Gratt. 738, and note, where numerous cases are collated; *Barton* v. *Ridgeway*, 92 Va. 162, 23 S. E. 226.

The treasurer and his surety contend in this case, that the same rule of accountability ought to govern in cases of public officers, where public funds have been lost.

The decisions of the courts in this country, both State and Federal, upon the question, are somewhat conflicting, but the great weight of authority is in favor of holding public officers handling public funds to a much stricter accountability than fiduciaries for the loss of private funds.

In the case of *United States* v. *Prescott*, 3 How. 578, 11 L. Ed. 234, decided by the Supreme Court of the United States in 1845, which is a leading case upon the subject, approved and followed in many of the States of the Union, it was held that the officer was absolutely liable for the public funds which went into his hands. Mr. Justice McLean, in delivering the opinion of the court, said: "Public policy requires that every depositary of the public money should be held to a strict accountability. Not only that he should exercise the highest degree of vigi-

lance, but that he should keep safely the moneys which come to his hands. Any relaxation of this condition would open a door to frauds which might be practiced with impunity. A depositary would have nothing more to do than to lay his plans and arrange his proofs so as to establish his loss without laches on his part. Let such a principle be applied to our post-masters, collectors of the customs, receivers of public moneys, and others who receive more or less of the public funds, and what losses might not be anticipated by the public? * * * * As every depositary receives the office with a full knowledge of its responsibility, he cannot in case of loss complain of hardship. He must stand by his bond and meet the hazard which he voluntarily incurs."

In the case of *Tillinghast* v. *Merrell*, 151 N. Y. 135, 45 N. E. 375, 56 Am. St. Rep. 612, 34 L. R. A. 676, it was held that an officer handling public funds is liable on grounds of public policy for public money lost by the failure of a firm of private bankers with whom he had deposited it, although he acted in good faith and without negligence. In discussing the question, which was an open one in that State (New York), the judge delivering the opinion said: "As before intimated, we must consider and decide this question upon general principles and in the light of public policy. In the case of an officer disbursing the public moneys, much may be said in favor of limiting his liability where he acts in good faith and without negligence, and a strong argument can be framed against the great injustice of compelling him to respond for money stolen or lost while he is in the exercise of the highest degree of care, and engaged in the conscientious discharge of duty. When considering this side of the case it shocks the sense of justice that a public officer should be held to any greater liability than the old rule of the common law, which exacted proof of misconduct or neglect. It is at this point, however, that the question of public policy presents itself, and it may well be asked whether it is not wisest to sub-

ject the custodian of the public moneys to the strictest liability, rather than open the door for the perpetration of frauds in numerous ways impossible of detection, thereby placing in jeopardy the immense amount of the public funds constantly passing through the hands of disbursing agents. Without regard to decisions outside of our jurisdiction, we think the weight of the argument, treating this as an original question, is in favor of the rule of strict liability, which requires a public official to assume all risks of loss, and imposes upon him the duty to account as a debtor for the funds in his custody."

The strict rule laid down in the case of *United States* v. *Prescott. supra*, and approved and followed in a number of cases, was modified in the case of *United States* v. *Thomas*, 15 Wall. 337, 21 L. Ed. 89, in which it was held that a collector or receiver of public money under bond to keep it safely and to pay it when required, is not bound to do so at all events, but was excused from so doing where the money was forceably seized by the Confederate authorities during the civil war, without fault on the part of the officer. In that case it was held that a depositary of public funds was not a debtor but a bailee, yet he was a special bailee subject to special obligations, and was, under the manifest policy of the law, as shown by the acts of Congress on the subject, to be held to a very strict accountability.

Our legislature, in the statutes enacted with reference to county treasurers, manifests at least as great anxiety to hold them to a strict accountability for the public funds which go into their hands as did Congress by the statutes in force when the *Thomas case* was decided. They are not only required to give bond with sufficient surety to faithfully discharge the duties of their office according to law (Const., sec. 85; Code, 1904, secs. 177, 812, 813, 814), but it is made the duty of the circuit court of each county to have one of its commissioners to inquire twice each year into the sufficiency of

the treasurer's bond, and if not reported sufficient for any cause to require a new or additional bond. (Code, 1904, sec. 855). It is made the treasurer's duty to keep accurate accounts of all moneys received and disbursed by him, to make bi-monthly statements thereof to the board of supervisors, and to "keep the books, papers and moneys pertaining to his office at all times ready for the inspection of the Commonwealth's attorney or board of supervisors * * * *" Code, 1904, sec. 858. He is required to settle with the board of supervisors and school boards by the first day of October of each year, and on that day to exhibit to the circuit judge and Commonwealth's attorney of his county the cash to balance his accounts, if any is due, with the county levy and the county school fund. If any treasurer fails to produce the cash to balance his said account "it is made the duty of the court to proceed against him by rule, suspend him and appoint some competent person to discharge the duties of his office." Section 5, Ch. 1140, Acts 1899-1900, pp. 1241-2. When his term of office expires or if he die, resign or be removed from office, he or his personal representative, as the case may be, shall immediately make settlement, "showing the amount in his hands to be accounted for, and the fund to which the same belongs, and deliver to his successor all bonds, books and papers belonging to his office and all moneys belonging to the county." Code, 1904, sec. 862. It is further provided that if any treasurer or his deputy "shall lend any money belonging to the State, city or county, with or without interest, or use the same for any purpose other than such as may be provided by law, he shall forfeit for every such loan not less than one hundred nor more than five hundred dollars * * * * to be recovered to the use of the Commonwealth, city or county whose money was so used, as the case may be." Code, 1904, sec. 864. For violating any of the provisions of chapter 37 of the Code (of which the sections referred to are a part), relating to the county levy, he is made criminally liable, and

upon conviction, in addition to the fine and corporal punishment imposed, he must be removed from office, and he and his surety on his official bond are made liable to the party aggrieved for double damages sustained by such violation. Code, 1904, sec. 866.

In addition to the manifest intention of the legislature, as shown by the statutes cited and others which might be cited, to guard with the utmost care the public funds from loss, and to hold county treasurers handling them to a very strict accountability for their safe-keeping, the weight of argument upon general principles and in the light of public policy, as we think, as well as the preponderance of authority is in favor of the rule of strict liability, which requires a public official to assume all risks of loss, and imposes upon him the duty to account for the public funds which go into his hands, except in cases where the loss results from the act of God or the public enemy, or possibly from some other overruling necessity. See the following cases, where the loss resulted from bank failures, theft, robbery and the like: *U. S.* v. *Morgan*, 11 How. 154, 13 L. Ed. 643; *U. S.* v. *Dashiel*, 4 Wall. 182, 18 L. Ed. 319; *U. S.* v. *Keehler*, 9 Wall. 86, 19 L. Ed. 574; *Boyden* v. *U. S.*, 13 Wall. 56, 20 L. Ed. 527; *Halliburton* v. *U. S.*, 13 Wall. 63, 20 L. Ed. 533; *Hancock* v. *Hazzard*, 12 Cush, 112, 59 Am. Dec. 171; *McEachen* v. *Township*, 35 N. J. L. 528; *Com.* v. *Conly*, 3 Penn. 372; *Nason* v. *Director of Poor*, 126 Penn St. 445, 17 Atl. 616; *State* v. *Clark*, 73 N. C. 255; *State* v. *Powell*, 67 Mo. 395, 29 Am. Rep. 512; *Taylor* v. *Morton*, 37 Ia. 550; *Thompson* v. *Board of Trustees*, 30 Ill. 99; *Perley* v. *County of Muskegon*, 32 Mich. 132, 20 Am. Rep. 637; *Wyandott Co.* v. *Harper*, 6 Ohio St. 607, 67 Am. Dec. 363; *Holbert* v. *State*, 22 Ind. 125; *Ward* v. *County*, 10 Neb. 293, 4 N. W. 1001, 35 Am. Rep. 477; *Fairchild* v. *Hodges*, 14 Wash. 117, 44 Pac. 125, 31 L. R. A. 851; *State* v. *Newton*, 33 Ark. 276; *Wilson* v. *Wichita Co.*, 67 Tex. 647, 4 S. W. 67; *Rose* v. *Douglas Township*, 52 Kan. 451, 34 Pac. 1046, 39 Am.

St. Rep. 354; *Griffin* v. *Board of Commissioners*, 71 Miss. 767, 15 South. 107; *Omro* v. *Kamo*, 39 Wis. 462.

Conceding for the purposes of this case that the treasurer's action in depositing the money in bank was not in violation of section 864 of the Code prohibiting his loaning the money either with or without interest; that in so depositing the same the treasurer was following a long prevailing practice in the county; that the deposit was made with the knowledge and approval of the board of supervisors; and that he honestly believed that it was the safest disposition that could be made of the money until it could be disbursed, as provided by law, still, under the strict rule of accountability which we have held should be applied to county treasurers handling public funds, the deposit was made at his own and not the risk of the county. The deposit was his voluntary act, made for his own convenience in caring for and disbursing the fund, not required or authorized by law. Neither the custom of his predecessors in office, however long continued, nor the approval of the county authorities, however formal, could have any effect upon his liability. He was made the custodian of the fund, and his accountability is to be determined by law, and not by the practice or opinions of others.

The judgment complained of must be reversed, and the cause remanded to the circuit court with direction to render judgment in accordance with the views expressed in this opinion.

*Reversed.*