Syllabus.

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## C. F. CAMP AND THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, A CORPORATION, v. HUGH T: BIRCHETT, TREASURER OF THE CITY OF HOPEWELL, WHO SUES AT THE RELATION OF AND FOR THE BENEFIT OF THE CITY OF HOPEWELL.

February 26, 1925.

1. MUNICIPAL CORPORATIONS—*City Treasurer—Liability of Treasurer and his Surety on Bond for the Loss of City Revenue—Case at Bar.*—In the instant case, an action against a city treasurer and his surety, the charter of the city required that the city treasurer should enter into a bond payable to the Commonwealth in the sum of $25,000.00. It was contended by the surety that its suretyship covered only the revenue of the State.

  *Held:* That the condition of the bond given and the penalty thereof were entirely different from that provided for in section 2699 of the Code of 1919, providing for a, bond by a treasurer for the faithful discharge of his official duties in relation to the State revenue; and that there was no merit in the contention that the ,bond did not cover the city revenue.

2. COUNTIES—*Counties and Municipal Corporations Distinguished.*—Counties are *quasi* municipal corporations, whose powers and duties are set forth in general statutes in the main and exercised by boards of supervisors, while cities are municipal corporations proper, organized generally by special charters, with councils charged with the exercise of the powers and duties therein granted and imposed, which are chiefly legislative in character.

3. COUNTIES—*Municipal Corporations—Subordinate—Political Subdivisions.*—Both counties and municipal corporations are subordinate political subdivisions of the State, established for the better administration and government in strictly local affairs. Each has the complement of constitutional State officers, elected by the people in the main, and who are governed by the general laws of the State.

4. COUNTIES—*Municipal Corporations—City and County Treasurer—Duties.*—Among the State officers are county and city treasurers, whose

duties are to have custody and charge of the revenues, both State, county, and city, in the political subdivision for which they are respectively elected, unless otherwise provided.

5. MUNICIPAL CORPORATIONS—*Limitation of Powers—Implied Powers.*—The powers of municipal corporations are limited to those granted in express terms, those necessarily or fairly implied in or incident to the powers expressly granted, and those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable.

6. MUNICIPAL CORPORATIONS—*City Treasurer—Power of Council as to the Deposit of Revenue—Case at Bar.*—In the instant case, an action against a city treasurer and his surety for funds of the city lost in a bank failure, the council of the city had directed the treasurer to deposit the funds in his hands in the bank which failed and it was argued that a clause of the charter of the city authorized the council to direct the treasurer where he should deposit the revenues, and to absolve him and his surety from loss by the failure of the bank.

   *Held:* That under the clause of the city charter relied on the council certainly had no express power to create any other depository of the public money than that provided by law, and that it was not indispensable or necessary that a city council should have the power to establish depositaries of public funds.

7. PUBLIC OFFICERS—*Liability for Loss of Public Funds—General Rule.*—The rule of strict liability which governs public officers requires a public official to assume all risks of loss, and imposes upon him the duty to account for the public funds which go into his hands, except in cases where the loss results from the act of God or the public enemy, or possibly from some other overruling necessity. Thus such officers have been held liable for losses resulting from bank failures, theft, robbery and the like.

8. CITY AND COUNTY TREASURER—*Custody of Funds—Power of City or County.*—A city or county cannot contravene the fixed public policy of the State, and relieve a treasurer of his duties and liabilities and shift the responsibility for the safety of public funds to some other custodian, however meritorious, without express enactment of the legislature.

UPON PETITION TO REHEAR.

Richmond, October 1, 1925.

9. MUNICIPAL CORPORATIONS—*City Treasurer—Direction of Council—Surrender of Powers.*—A city treasurer is not subject to the direction and control of the city council. City treasurers are constitutional officers elected by the people and their duties are prescribed by law. They cannot surrender any of their powers to any other officers

or escape their responsibilities by acting under the advice or direction of the city councils.

10. MUNICIPAL CORPORATIONS—*City Treasurer—Removal.*—Only the courts upon proper procedure can remove treasurers for misfeasance, malfeasance or other breaches of duty.

11. MUNICIPAL CORPORATIONS—*City Treasurer—Liability for Funds Deposited in Bank—Public Officers—Liability.*—City treasurers are held to a much higher liability for public funds deposited in banks than ordinary agents, attorneys and other fiduciaries. The weight of argument upon general principles, and in the light of public policy, as well as the preponderance of authority, is in favor of the rule of *strict liability,* which requires a public official to assume all risks of loss and imposes upon him the duty to account for the public funds which go into his hands, except in cases when the loss results from the act of God or the public enemy, or possibly from some overruling necessity.

12. MUNICIPAL CORPORATIONS—*City Treasurer—Direction of Council to Make a Loan or Deposit.*—In the instant case, an action against a city treasurer and his surety for funds of the city lost in a bank failure, the money was deposited in the bank, and a certificate of deposit taken therefor bearing interest, at the direction of the city council.

    *Held:* That it was immaterial whether this was technically speaking a loan or deposit, as the council was without power to direct the treasurer to do either.

13. MUNICIPAL CORPORATIONS—*City Treasurer—Duty to Keep Money of the City.*—It is the duty of a city treasurer to safely keep the money of the city; the responsibility and duty are his alone, and if he deposits or leaves money in an insolvent bank, he and his surety are liable for its loss.

Error to a judgment of the Corporation Court of the city of Hopewell, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*J. O. Heflin,* and *Sands, Williams & Lightfoot,* for the plaintiff in error.

*A. L. Jones* and *R. H. Mann,* for the defendant in error.

CHRISTIAN, J., delivered the opinion of the court.

C. F. Camp was elected treasurer of the city of Hopewell in the November election of 1917. He assumed office on July 1, 1918, and remained in the exercise and the discharge of his duties as such treasurer until his term expired on December 31, 1922. On December 11, 1917, C. F. Camp appeared before the judge of the Corporation Court of the city of Hopewell and entered into bond with The Fidelity and Casualty Company of New York as surety, in the penalty of $25,-000.00 and conditioned for the faithful discharge of the duties of his office or trust as city treasurer aforesaid.

The charter of the city of Hopewell provided that "The council shall have control of all fiscal and municipal affairs of said city and all real and personal property; and may make all ordinances and by-laws relative to the same as it deems proper, and from time to time may make, amend and reamend any and all ordinances for the proper regulation, management and government of the said city, not in conflict with the Constitution and statutes of this State or of the United States, and may impose fines and penalties for the violation or nonobservance thereof."

Pursuant to this authority, the city council adopted numerous ordinances and resolutions requiring the treasurer to deposit the funds in his hands in such bank or banks as directed by the council; that the treasurer keep all funds in his possession in some safe banking institution or institutions in the city of Hopewell, said bank to be designated by the council, and in furtherance of this policy the city council by resolution made the Virginia State Bank and the National Bank of Hopewell depositories of all the moneys and

securities of the city, and instructed the treasurer to keep equal balances as far as practicable in both of said banks.

And again, on February 8, 1921, the city council adopted a further resolution directing the treasurer to deposit the "bond money" of the city on certificate of deposit bearing interest, and requiring that the bank having on deposit said bond fund be required to give a bond covering said deposit. Camp, pursuant to this resolution, deposited in his name as treasurer in the Virginia State Bank of Hopewell on certificate of deposit $5,000.00, but took no security therefor. A few months thereafter the Virginia State Bank failed and was closed. It had on deposit to the credit of C. F. Camp, treasurer, general fund $272.77, and on certificate "bond money" $5,000.00. These amounts were reduced by dividends paid out of the assets of the bank to $4,271.99. When Birchett became treasurer he demanded this banlance from Camp, who tendered him a check and the certificate of deposit on the defunct bank in settlement of the balance due, which Birchett declined. The council of the city of Hopewell undertook to release Camp from the loss sustained by the failure of the bank.

Birchett being advised that Camp and his surety were liable upon his bond for the loss sustained by the failure of the bank, brought suit in the Corporation Court of Hopewell.

There is no dispute about the facts in the case, and the question before the court for decision was whether the ordinances, resolutions and action of the council relieved Camp and his surety from liability for the loss. There were two trials of the case. At the first trial the jury found in favor of the defendants, and the court, upon motion of the plaintiff, set aside the ver-

·dict of the jury and granted him a new trial, to which the defendants excepted. At the second trial there was a verdict for the plaintiff, which the court refused to set aside and entered up judgment for the plain'tiff for the sum of $4,271.99. The court held, during the entire trial of the case, that the case was controlled by the ·case of *Mecklenburg* v. *Beales,* 111 Va. 691, 69 S. E. 1032, 36 L. R. A. (N. S.) 285, and applied the law as therein established to the striking out of the defend- ·ants' grounds of defense; the exclusion of testimony; the giving and refusing instructions, and setting aside the verdict of the jury at the first trial and entering ·up judgment in favor of the plaintiff at the second trial. The defendants excepted to the rulings of the ·court, and for errors assigned the case is here for review.

[1] Among the special grounds of defense urged by :the surety, The Fidelity and Casualty Company, was that its suretyship covered only the revenue of the ;State. The bond was taken by virtue of the city charter ·which provides: "The commissioner of revenue shall ·enter into a bond, payable to the Commonwealth of Virginia, in the penalty of two thousand dollars; the ·city treasurer into a bond, payable in like manner, in the sum of twenty-five thousand dollars." Acts of Assembly, 1916, page 96, section 215, Code of 1904, now section 2699 Code of 1919, provides: "Every . city treasurer * * * shall, *in addition to any bond required of him by his city under its charter and* ·*ordinances,* give a bond with sufficient surety in a penalty of not greater than the amount of State revenue to be received only by him * * * payable to the Commonwealth and with the condition for the faith- ful discharge of his ·official duties in relation to the State revenue and of such other official duties as are ·or may be imposed upon him by law, otherwise than

by the charter and ordinances of his city, etc." The condition of the bond given and the penalty thereof were entirely different from that provided for in the above section of the Code, and there is no merit in the contention that the bond did not cover the city revenue, and the court was right in all of its rulings upon this defense.

It is not necessary to consider in detail the numerous assignments of error submitted for consideration, as each and every one is but an amplification of a single principle of law to the different steps in the development of the case as the trial progressed to judgment, so that a decision of the law upon the merits will settle the rights and liabilities of the parties.

[2, 5] The proper elucidation of the law makes some consideration of the governmental functions of counties and cities necessary. Counties are *quasi* municipal corporations, whose powers and duties are set forth in general statutes in the main and exercised by boards of supervisors, while cities are municipal corporations proper; organized generally by special charters, with councils charged with the exercise of the powers and duties therein granted and imposed, which are chiefly legislative in character. Both are subordinate political subdivisions of the State, established for the better administration and government in strictly local affairs. Each has the complement of constitutional State officers, elected by the people in the main, and who are governed by the general laws of the State. Among these State officers are county and city treasurers, whose duties are to have custody and charge of the revenues, both State, county and city, in the political subdivision for which they are respectively elected, unless otherwise provided. The charter of the city of Hopewell, Acts 1916, page 96, provides that the city

treasurer, among other elective city officers, "shall have possession and exercise all of the powers and duties, and be subject to all and singular liabilities conferred and imposed by general law upon like officers, respectively, in other cities of the first class in this Commonwealth." It is contented that the charter of Hopewell, section 10, Acts 1916, page 100, quoted above, gave power to the council to direct the treasurer where to deposit the revenues derived from taxes or otherwise and to absolve the treasurer and his surety from loss by the failure of the bank. Does the section confer this power? The following is the well established law by which municipal charters in Virginia are construed:

"The powers of municipal corporations are limited to those granted in express terms, those necessarily or fairly implied in or incident to the powers expressly granted, and those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable." *Lynchburg, etc., Ry. Co.* v. *Dameron,* 95 Va. 545, 28 S. E. 951; *City of Richmond* v. *Lynch, et al.,* 106 Va. 324, 326, 56 S. E. 139.

[6] It is hardly indispensable or necessary that the city council of Hopewell have power to establish depositories of public funds. The council certainly had no express power to create any other depository of the public money than that provided by law. The council and treasurer are separate and distinct public fiscal agents, charged by law with distinct duties. It is the duty of the council to raise, by taxes, licenses, or otherwise, the necessary revenue for the local needs, and disburse the same as the law directs, while the treasurer has imposed upon him the duty of receiving the revenue, safely keeping the same and paying it out according to law. They serve, respectively, as checks upon each other.

[7] There is considerable diversity of authority in this country upon the extent of the liability of treasurers and other custodians of public funds, and counsel upon both sides of this case have marshalled with great industry the authorities to sustain their respective views and discussed the same with ability, but the question is no longer open in this jurisdiction. In the case of *Mecklenburg* v. *Beales, supra,* Judge Buchanan, after careful consideration of the numerous authorities, State and Federal, and upon principle, thus declares the public policy and law of Virginia: "In addition to that manifest intention of the legislature, as shown by the statutes cited, and others which might be cited, to guard with the utmost care the public funds from loss, and to hold county treasurers handling them to a very strict accountability for their safekeeping, the weight upon general principles and in the light of public policy, as we think, as well as the preponderance of authority, is in favor of the rule of strict liability, which requires a public officer to assume all risks of loss, and imposes upon him the duty to account for the public funds which go into his hands, except in cases where the loss results from the act of God or the public enemy, or possibly from some other overruling necessity. See the following cases, where the loss resulted from bank failures, theft, robbery and the like." Then he cites numerous cases from the United States Supreme Court, and cases from the Supreme Court of many States throughout this country. *Mecklenburg* v. *Beales,* 111 Va. 691, 697, 69 S. E. 1032, 36 L. R. A. (N. S.) 285.

[8] The public funds belong to the citizens of Hopewell; the council has no control over them except to apply them for the lawful purposes of government, and if it can lend them to the banks, it could lend them or

their credit to favored merchants or manufacturers:
which even counsel for the defense would admit is
*ultra vires.* Upon careful examination of the law of the
whole case, it does not appear that a city or county can
contravene the fixed public policy of the State, and
relieve a treasurer of his duties and liabilities and shift
the responsibility for the safety of public funds to
some other custodian, however meritorious, without
express enactment of the legislature.

The rulings of the trial court are according to law,
and the judgment will be affirmed.

*Affirmed.*

### UPON PETITION TO REHEAR.

Richmond, October 1, 1925.

PER CURIAM:

[9,10] The contention of the defendants in this case is:
that the city treasurer was subject to the direction and
control of the city council. This is not true in law.
City treasurers are constitutional officers elected by
the people and their duties are prescribed by law. They
could not surrender any of their powers to any other
officers or escape their responsibilities by acting under
the advice or direction of the city councils. Only the
courts upon proper procedure can remove treasurers
for misfeasance, malfeasance, or other breaches of duty.

[11] They are held to a much higher liability for
public funds deposited in banks than ordinary agents,
attorneys and other fiduciaries. The weight of argu-
ment upon general principles, and in the light of public
policy, as well as the preponderance of authority, is in
favor of the rule of *strict liability,* which requires a

·public official to assume all risks of loss and imposes upon him the duty to account for the public funds which go into his hands, except in cases when the loss results from the act of God or the public enemy, or possibly from some overruling necessity." *Mecklenburg* v. *Beales*, 111 Va. 691, 69 S. E. 1032, 36 L. R. A. (N. S.) 285.

[12] In defendants' petition for rehearing considerable emphasis is placed upon the court's use of the word "lend" in characterizing the deposit of the money in the bank, and taking therefor a certificate of deposit bearing interest, at the direction of the city council. Whether this was, technically speaking, a loan or deposit has no bearing upon the law of this case, as the council was without power to direct the treasurer to do either.

[13] It was the duty of Camp to safely keep the money of the city of Hopewell; the responsibility and duty were his alone, and if he deposited or left money in an insolvent bank, he and his surety are liable for its loss.

The petition is denied.