## CIRCUIT COURT OF CLARKE COUNTY

Fidelity & Deposit Co. of Maryland

    v.

Bank of Clarke County

April 23, 1954

By JUDGE ELLIOTT MARSHALL

This is a suit in equity by the surety of the bond of the Treasurer of Clarke County to recover of the defendant bank certain sums of money claimed to be due the complainant because of its liability and consequent indemnity payment to the County and Commonwealth as the result of the default of the Treasurer.

The bill of complaint alleges the following acts of the Treasurer and the Bank upon which the liability of the latter is predicated.

During the months between August, 1950, and January, 1952, inclusive, the Treasurer presented to the Bank ten checks or "General Warrants" of the Commonwealth drawn by the Treasurer of Virginia. All of the checks were of the usual distinctive cardboard used by the State. The Commonwealth Seal and the words "GENERAL WARRANT" were conspicuously printed on the face of each check. The first was payable to "W. D. Burtner, Treas." (Ex. A-1); all the others to the Treasurer of Clarke County. The first was endorsed "W. D. Burtner Treas. W. D. Burtner"; the second (Ex. A-2) "County of Clarke, W. D. Burt-

ner"; the third (Ex. A-3) "For Deposit Only County of Clarke Va. W. D. Burtner, Treas."; and the remaining seven (Ex. 4-10) "W. D. Burtner, Treas. of Clarke County."

All of the checks were for public funds to be held by the Treasurer in his official capacity.

All of the checks except the third were credited to the personal account of W. D. Burtner. The third, dated August 24, 1950, was for $14,300.00 of which $10,851.31 was deposited in the Treasurer's official account under the name of "County of Clarke, Va."; $300.00 was paid Burtner in cash; and $3,148.69 was credited upon a note due by Burtner to the Bank.

The other nine checks were in varying amounts from $95.08 to $1,192.68.

At the time of the presentation of these checks the Treasurer was short in his official funds and had misappropriated some of the money. During the summer of 1952 it was ascertained that the Treasurer was deficient in his official accounts in the sum of $76,433.10 and, on August 21, 1952, a judgment was entered in that sum in favor of the County against the Treasurer and his surety, the complainant, which paid the full amount. Although the bill does not allege, I assume that counsel will concede, and the bill can be so amended, that the Treasurer has not repaid the loss to the surety, and that he is insolvent to the extent that it cannot recover from him.

I also assume that the bank is a duly certified and qualified Depository under Art. 2, Chap. 20, of the Code.

The bill contains no allegations of actual knowledge of or intentional participation in the misappropriation.

The sufficiency of the bill is challenged by demurrer under the contention that the acts alleged do not render the bank liable in the absence of actual knowledge or participation.

There can be little doubt (and the issue is not seriously debated by the defendant) as to the liability of the bank in the amount paid to it upon the Treasurer's personal obligation. As will be observed later the Treasurer in no instance has the right to appropriate, even temporarily, money to his own use. In accepting directly a portion of the money represented by the check the bank

was charged with knowledge that the money was not that of its debtor but of the public, and that it was being paid a personal obligation with public funds. The only conceivable theory under which the legality of such a transaction could be rationalized would be that the relationship between the Treasurer and the public as to the funds is merely that of debtor and creditor. This, of course, as shall be seen later, is not true. *Jones* v. *U.S.F. & G.*, 165 Va. 349, 182 S.E. 560 (1935); *Bank of Giles County* v. *F. & D. Co.*, 84 F.2d 321 (4th Cir. 1936).

The question as to the liability of the bank when a defaulting Treasurer deposits checks earmarked as public money to his personal account or demands cash for such checks is a more perplexing one.

I think it necessary to contemplate the functions, powers and duties of the Treasurer in order fully to understand the problem.

A Virginia County Treasurer is a constitutional officer. Article VII, Sec. 110, of the Virginia Constitution establishes the office but does not attempt to define its duties; on the contrary it specifically provides that the duties shall be defined by general law.

Prior to 1932 the statutes merely provided that the Treasurer should "receive" all moneys payable into the treasury of the County and "disburse the same on warrants drawn by the board of supervisors." (Code 1919, Chap. 110, Sec. 2774). There was no provision as to the method of the keeping or deposit of the funds. However, Code Sec. 2788 did provide that he could not use or lend the money. Sec. 2790 made it a misdemeanor to violate any of the provisions of Chap. 110.

Under this state of the statutory law there were several cases which undertook to define the duties and liabilities of Treasurers with respect to the handling of public funds.

In the case of *Mecklenburg* v. *Beales*, 111 Va. 695, 697 (1911), the court defined the duty of a treasurer to "assume all risks of loss, and (the law) imposes on him the duty to account for the public funds which go into his hands except in cases where the loss results from the act of God or the public enemy, or possibly from some other ruling necessity." While the court did not expressly say so it seems to have approved the doctrine

of *U.S.* v. *Thomas*, 82 U.S. (15 Wall.) 337, 21 L. Ed. 89 (1872), which modified the rule of absolute liability laid down in *U.S.* v. *Prescott*, 44 U.S. (3 How.) 578, 11 L. Ed. 234 (1845), to the extent of saying that a Treasurer is not a debtor but a bailee subject to special obligations under the manifest policy of the law "to be held to a very strict accountability."

In the case of *Aetna Casualty Co.* v. *Board of Supervisors*, 160 Va. 11, 58 (1933), the *Mecklenburg* case was cited for the proposition that a Treasurer's liability "is that of a special bailee, subject to very strict obligations."

In *Jones* v. *U.S.F. & G.*, *supra*, it was said that public funds in the hands of Treasurers remain at all times public moneys and the Treasurer is "but the custodian thereof."

All public money received by the treasurer was required to be held in his hands "*in kind* until it is disbursed by him according to law." However, he would not be guilty of a misappropriation or violating Code Sec. 2788, *supra*, if, acting in good faith and with due care he deposited the money in a bank "to his account *as treasurer*." *Aetna Cas. Co.* v. *Board of Supervisors*, *supra*, 58. Although not guilty criminally he and his surety were liable civilly irrespective of good faith or due care. ' *Mecklenburg* v. *Beales*; *Aetna Cas. Co.* v. *Board of Supervisors*, both *supra*.

To sum up: apparently under the law prior to 1932, the treasurer was a custodian or special bailee of the public funds whether in the form of cash, checks or drafts. He could hold the cash *in kind* or deposit it in a bank to his account as treasurer. He could cash checks payable to himself as treasurer, holding the cash *in kind*. He could in good faith and with due care deposit public moneys in a bank to his account *as treasurer*. So far as the cases go any other "use" or disposition of the public money by him might constitute a violation of Code Sec. 2788, *supra*, even though he did not have the intent necessary to constitute embezzlement. If he "used" one penny of the public money which he held "*in kind*" in any manner other than the statutes authorized for disbursement thereof he would be guilty of a misdemeanor. If he deposited any of the money to his personal account

it seems to me that he would be guilty, either of "using" the money or "lending" it; perhaps both. Even if he had no intent to misappropriate, the act of depositing it in his own account, thus mixing it with his own funds, would constitute an assumption of control over it far beyond the authority to hold it "in kind." It might be used to inflate his account for the extension of his credit and thus constitute a "use" of the money. It might constitute a loan to the bank, with or without interest. I think that these are some of the reasons that Epes, J., in his opinion in the *Aetna* case, *supra*, p. 58, was so careful to specify that deposit *in the official treasurer's account* did not constitute a violation of Sec. 2788. He knew, of course, that it had been held in some states that deposit of public funds in a general account *in the name of the officer in his official capacity* constituted a loan in violation of the law. *Wiley* v. *Sparta*, 114 S.E. 45 (Ga. 1922). This and other cases cited in the case of *Limestone County* v. *Montgomery* (Ala. 1933) and its annotations in 87 A.L.R. 164, demonstrate that while some of the authorities hold that such a deposit is a loan in violation of the law, the majority have accepted Justice Epes's view that if the deposit was made in good faith and not for personal gain it was not a "loan" if it were made in the official account of the officer *and not his personal account*. Although I find no cases on the exact point I feel that the inference to be drawn from the aforementioned decision is that the deposit in the treasurer's personal account would constitute a lending of the public funds. Accordingly, I am of the opinion that even prior to the enactment of the 1932 statutes the deposit of public funds to the personal account of a county treasurer would have been unlawful and constituted a crime under Code Sec. (1919) 2788.

After the *Carter* and *Mecklenburg* cases, both *supra*, and apparently to alleviate their rule of absolute civil liability in cases of bank failures, the Virginia Legislature in 1932 (Acts p. 831) enacted a statute which, although such purpose is not expressed in the title, is obviously designed to protect public funds in the hands of treasurers as well as to protect the treasurers themselves and their sureties in cases of bank failures.

This act as later amended appears as Art. 2, Chap. 20, Secs. 58-938 to 952 of the Code of 1950. It will be referred to as the Depository Act.

The Act provides, in substance, that banks shall be selected and approved as depositories for the money received by the treasurer. Even after selection and approval deposits in such banks are not authorized unless they give bond with prescribed security for the protection of the funds. The depository officers shall not permit the amount of deposits to exceed the amount of the bond and the value of the securities. If all of the provisions of Art. 2 are complied with the treasurer and surety are relieved of any liability in the event of default of the depositories. Sec. 58-938 provides that all money received by the treasurer *shall* be deposited, paid out and disbursed by him "in the manner hereafter provided."

Sec. 58-939 provides as follows:

> All money received by a county treasurer for the account of either the Commonwealth or the treasurer's county, *except such amount thereof as shall be necessary for the payment in cash of orders or warrants lawfully drawn upon the treasurer* and matured lawful bonds, notes or obligations of the treasurer's county, for the payment of which funds are available, shall be deposited by the treasurer as promptly as practical after its receipt in such bank or banks as is, or are, authorized by this article to act as depository or depositories therefor. All deposits made pursuant to this provision shall be made in the name of *the treasurer's county.*

In 1932 the Legislature also amended Sec. 2788. The word "lend" was omitted but it was provided that no treasurer shall "apply," "disburse" or "use" "any part of the public money" "in any manner or for any purpose other than the manner and purposes provided by law except by inadvertence." If the fund involved is more than $50.00 violation is a felony; if less, a misdemeanor. Acts 1932, p. 427; Code 1950 Sec. 58-929. The omission of the word "lend" was probably to eliminate any question as to whether

deposit at interest under the Depository Act constituted a lending in violation of this Code Section. However, the words "apply" and "disburse" are, in my opinion, of much broader connotation. There is more reason to say that a deposit is an "application" or "disbursement" than a loan.

The 1950 Code (Sec. 58-932) changed the language of Sec. 2790 (1919) so that violation of any of the provisions of the Depository Act shall constitute a criminal offense.

There apparently have been no pertinent cases decided since the 1932 Act. However, it seems to me that the intent and meaning is plain. The language used throughout the entire statute indicates the intent mandatorily to define the exclusive method of handling of public funds by the treasurer. If he deviates he is guilty of a crime, irrespective of intent to misappropriate. Under Code Secs. 58-929 and 932 if he deposited any portion of the public money, even temporarily, in any account other than in the name of the county he would be guilty of a crime and subject to removal.

It might be urged that the case of *Beckner* v. *Commonwealth*, 174 Va. 454, 5 S.E.2d 525 (1939), is authority for the proposition that Code Sec. 939 is not mandatory. That case involved Code Sec. 14-112 providing that a Trial Justice and other officers *shall* deposit public money in a bank within a reasonable time after receipt, and that if they should deposit any of such money in their personal account "or otherwise violate any of the provisions of this section (they) shall be deemed guilty of a misdemeanor." The court in that case, without stating its reasons, held that the requirement as to deposit of the funds was not mandatory and its violation was not criminal. However, the question there was whether the failure to make prompt deposit was a crime. I doubt that the court would have held that deposit in the personal account of the officer would not constitute a misdemeanor under the provisions of that statute. However, it is not necessary in the instant case for us to decide whether the whole Depository Act is mandatory or whether failure to make deposits promptly would constitute a crime. It is only necessary to decide whether under Sec. 58-929 it is a crime to violate the provisions of the last sen-

tence of Sec. 58-939; and/or whether deposit of public funds by a treasurer in his personal account violates Sec. 58-929. In my opinion either statute would be violated by such act of the treasurer if it were done advertently.

It is contended that if the Depository Act be construed as mandatory it is unconstitutional, because of the lack of legislative power to define the duties of a constitutional officer. This contention would also have applied to Code (1919) Secs. 2788 and 2790, now Secs. 58-929 and 932. Counsel cite *People* v. *West Englewood Trust & Sav. Bank*, 187 N.E. 525 (Ill. 1933), for the proposition that a Depository Act is unconstitutional because the legislature is without power to "strip a treasurer of. . . his right of absolute custody of the public funds." I am not informed as to the exact provisions of the Illinois Constitution, but if it contains a provision similar to the Virginia Constitution that "the *duties* and compensation of such officers *shall be prescribed by general law*," I cannot agree with the conclusion of the Court. Of course, I do not believe that the legislature would have the power to abolish the office or to destroy or materially to impair its effective administration, but it seems to me plain that the Virginia Constitution expressly authorized and directed the legislature to define and regulate the duties of the office by general statute. The only Virginia authority on the subject is *obiter dicta* in cases involving Commissioners of Revenue and members of Boards of Supervisors, both constitutional officers, where it was stated that the powers and duties of the office are fixed by statute. *McGinnis* v. *Nelson Co.*, 146 Va. 170 (1926); *Old* v. *Commonwealth*, 148 Va. 299, 138 S.E. 485 (1927), *Suprs.* v. *Powell*, 95 Va. 635, 29 S.E. 682 (1898). In my opinion any mandatory portion of the Depository Act is constitutional.

The remaining question is whether the bank is to be chargeable with liability merely because of its acceptance of the unlawful deposits.

At the outset, I think that the first check (Ex. A-1) may be eliminated from consideration. While it contained many earmarks indicative of the fact that it might be public money, it was not payable to Burtner as Treasurer of Clarke County, but only as "Treas." It might have given rise to conjecture or suspicion as to whether it

was public money, but there was nothing on the face of the check positively to identify it as such. Conceivably it might have been for any corporation or association of which Burtner was treasurer. He might have been legally entitled to receive the money from the organization and empowered to endorse the check in blank and deliver it to himself as a credit on his account with the owner. *Cocke's Adm.* v. *Loyall,* 150 Va. 336 (1928).

Such is not the case, of course, where the checks were payable to "Treas. Clarke Co." There could be no mistake that those checks represented public funds which could not legally be deposited to any account other than "in the name of the Treasurer's County," which was protected by the security required under the Depository Act. The acts of the employees of the bank in permitting the deposits assisted the Treasurer in a violation of the law, irrespective of whether he had any intention to misappropriate the money.

Banks are not chargeable with liability for all illegal deposits. In view of the enormous increase of the volume of business and the attendant multiplication of the numbers of clerical employees, the modern trend is to absolve the bank from liability for comparable transactions. But it is plain that the Legislature intended that a qualified depository under the act has certain extraordinary duties with respect to the public funds; among them, not to permit the deposits to exceed the bond and securities. The statute expressly prescribes the method of deposit and withdrawal. It carefully specifies that it is not intended to *create* liability for withdrawals for improper purposes (Sec. 58-951(3)); but does not expressly exempt the depository from liability for illegal deposits.

It seems to me that any citizen who had knowledge of such a violation of the statute would have the right and, perhaps, owe a moral duty to take steps to prevent such a jeopardizing of the safety of public moneys. Certainly, no one should assist in such a violation of the law, without incurring liability.

There have been two outstanding cases in other jurisdictions holding a bank liable under such circumstances, even though the defendant bank was not a designated public depository.

In *Employer's Liab. Assur. Co.* v. *Hudson River Trust Co.*, 294 N.Y.S. 699 (1937), the treasurer had the public funds deposited in a designated depository in an account styled "General Fund Account." He drew eleven checks aggregating $30,000.00 on this account; five payable to cash, and six payable to himself. The checks were deposited with a non-depository Trust Company, the defendant, to his personal account and the money converted to his own use. While the decision holding the Trust Company liable was primarily based upon its presumptive knowledge that the withdrawals were unlawful, the act of accepting the deposits was held to create liability, the court saying, p. 704:

> In the type of cases relating to public officials the statutory limitation upon the authority of the official to deal with public funds is presumed to be known by all, and a bank knowingly receiving funds from a public official under circumstances contrary to the statute is chargeable with notice of the violation and put upon inquiry to ascertain the truth.

If a non-designated depository be chargeable under such circumstances, it could scarcely be said that a statutory designated depository should not be under the facts of the instant case. It is true that the element of wrongful withdrawal is missing, but the checks themselves appear to have been more distinctively representative of public moneys and the statutory depository should be even more conversant with the requirements of the law.

The *Hudson River Trust Co.* case was extensively quoted and cited as authority for the majority opinion in the *Seaboard Surety Co.* v. *State Sav. Bank*, 11 N.W.2d 321 (Mich. 1943), holding a bank liable under like circumstances. That case involved a county clerk who deposited to his personal account checks payable to himself as clerk. There was no statutory depository for moneys paid to the clerk in his official capacity. The majority opinion was based on the assumption that the Michigan statutes prohibited such a deposit, apparently under the construction that the clerk must pay over such funds to the Treasurer. The law required deposit in a designated depository

of county funds in the hands of the Treasurer. Boyles, C.J., and Sharpe, J., concurring in the result, disagreed with the majority that the statutes covered the situation but held that *any checks plainly identifiable as for public funds* deposited to the personal account of an officer created liability on the bank in the event of misappropriation, irrespective of the statutory requirements as to deposit existing in the *Hudson* case. North, J., dissented on the ground that the statute did not prohibit the clerk from such a deposit and it was, therefore, of itself, not unlawful. The transaction not being *ipso facto* unlawful, the clerk was a *trustee* of the funds and the rule of nonliability of banks in cases of such deposits by fiduciaries should apply.

The only case cited by defendant involving a similar situation is *Fid. & Dep. Co. of Md. v. Citizens State Bank*, 11 N.E.2d 52 (Ind. 1937), in which it was held that the bank was not liable because of the Indiana Fiduciaries Act which specifically included public officials. The act expressly exempts a bank from liability for such a deposit unless it has "actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such a deposit." Previously, it had been held that banks accepting deposits or cashing drafts in violation of the depository laws of Indiana were "trustees *ex maleficio*" and liable to the state or agency thereof. *St. Joseph County v. Cits. Natl. Bank*, 170 N.E. 346 (1930); *Consolidated Schools v. Cits. Natl. Bank of South Bend*, 193 N.E. 389; *Bank Commissioner v. Wells County*, 196 N.E. 873. The court in those cases made no reference to the Fiduciaries Act.

This leads us to defendant's contention that the Virginia Fiduciaries Act absolves the bank from liability. The statute, Code Sec. 6-57, expressly exempts banks from liability in the absence of actual knowledge of misappropriation where a "fiduciary or agent" makes a deposit to his personal account of checks payable to his principal and endorsed by him as fiduciary. In my opinion the answer to this is that there is a distinction between the powers and duties of public officers and fiduciaries irrespective of the Depository Act. The term "fiduciary" has never been held to include public officers in Virginia. If the legislature had intended to include

public officers under the Fiduciary Act it would have said so. I do not think that this should be done by judicial construction in view of the variance between the duties and powers of public officers and those of fiduciaries and agents.

To sum up: it is my conclusion that under the law of Virginia, perhaps before, and certainly after, the passage of the Depository Act any deposit by a County Treasurer of public funds to his personal account is a violation of the law. All banks designated and qualified as depositories under the Act must take cognizance of the law. Money earmarked as County funds can be lawfully deposited only in the name of the county. A bank which permits the deposit of such money in the personal account of the treasurer is chargeable with knowledge that the act is unlawful, and renders itself liable in the event of the loss of such funds to the county. The surety of the defaulting treasurer which reimburses the county for its loss is subrogated to the latter's claim against the bank.

Accordingly, the demurrer must be overruled.